*New-Haven,*
November,
1816.

French
*v.*
Gray.

———————

## FRENCH *against* GRAY.

A deed of land, while unrecorded, is no evidence of title, except as against the grantor and his heirs, nor of any efficacy to enable the grantee to enter, and recover seisin and possession against a stranger.

THIS was an action of ejectment brought to recover the seisin and possession of a lot of land and a dwelling-house in *Huntington.* The action was commenced in *April,* 1815.

The cause was tried at *Danbury, September* term 1816, before *Trumbull, Smith* and *Baldwin,* Js.

On the trial, the plaintiff claimed title to the land in question, by virtue of a mortgage deed, executed by *David Stratton* to *William Bennett,* dated *July* 1st, 1786 ; and also, by virtue of a quit-claim deed of the same land, executed to the plaintiff, by *Bennett,* together with one *Samuel Curtis,* whose claim or title, if any, did not appear, dated *January* 19th, 1789. The last mentioned deed was recorded in due season, but the deed from *Stratton* to *Bennett* was not recorded until the 9th day of *February* 1811.

It was agreed, that *Stratton,* at the time of executing the mortgage deed to *Bennett,* was the lawful proprietor of the premises.

The defendant denied the plaintiff's right of recovery, on the ground that he, and also *Stratton* the mortgagor, had been ousted and disseised of the premises, for more than fifteen years previous to the commencement of the action.

In support of this defence, the defendant offered evidence to prove, that one *Seth Gray,* in the year 1789, entered on the premises, consisting of a small house and about two acres of land, and that he continued in possession until the year 1810, when he abandoned the premises, and that his son *Joseph,* the present defendant, had held the possession ever afterwards. To oppose this claim, the plaintiff offered evidence to prove, 1. That in the year 1796, *Seth Gray* moved off all his effects, and totally abandoned the premises, for the period of about one year and a half. 2. That one *Zachariah Lyon* held an execution in his favour against *Stratton,* the returnday of which had elapsed, which, prior to the year 1800, he caused to be levied on a part of the premises, as the property of *Stratton* ; that the plaintiff also held an execution in his favour against *Stratton,* under like circumstances, which he caused to be levied on the residue of *Stratton's* supposed right in the premises ; that immediately afterwards, *Lyon,* by deed of quit-claim, conveyed all the right acquired by his levy, to one *Jared Beardslee,* but the deed was not recorded ; that *Beardslee* agreed with the plaintiff for the purchase of his right acquired by virtue of his levy, but no deed was executed by the plaintiff to *Beardslee,* in pursuance of such agreement ; that *Beardslee,* in *April* 1801, entered on the premises, by virtue of his claims before mentioned, and gave notice of

such claims to *Seth Gray*, who was then in possession; and that it was thereupon agreed between *Beardslee* and *Seth Gray*, that *Beardslee* should hold the exclusive possession of a certain lot containing about two acres, parcel of the premises, and that *Gray* should retain the possession of a small dwelling-house, and garden, also parcel of the premises, as tenant at will of *Beardslee*; that *Beardslee* plowed and sowed the two acres of land, but that before the time of harvest, he was so molested in his enjoyment of the premises, by the family of *Gray*, that he did not reap the grain sown; and that thereupon, the deed from *Lyon* to *Beardslee* was delivered back, and the contract between *Beardslee* and the plaintiff was rescinded.

It was also proved, that in the year 1803, in pursuance of an agreement between *Lyon* and the plaintiff, *Lyon*, claiming title by virtue of the levies before mentioned, and in behalf of himself and the plaintiff, entered upon the premises then in the possession of *Seth Gray*, and demanded the surrendry thereof; with which demand, *Gray* refused to comply.

Upon this state of the case, the court charged the jury, that the possession and ouster of the owner must have continued without interruption, for the term of fifteen years. If during any part of the term, no person is in possession, holding out the owner, this is an interruption, and the owner is revested with the possession. If the owner, by himself, or an agent authorized by him, enters on the land, for the purpose of taking possession, claiming it as his own, and demands of the tenant to deliver up the possession, or having so entered, takes possession and exercises acts of ownership, of which the tenant has full knowledge, in either case, the possession is interrupted, and no right or title is gained by the tenant.

The court also instructed the jury, that no act done or performed, either by *Lyon* or *Beardslee*, in relation to the premises, nor any entry claimed to have been made by either of them, could have any effect upon the cause, as it appeared from the facts conceded, that they had no title to the land, nor any authority from the owner, to make entry, or take the possession.

The court further charged the jury, if they should be of opinion, that there had been a continued and uninterrupted possession of the land, for the term of fifteen years, by which

the owner had, during that period, been ousted and holden out from the land in question, that they should find for the defendant ; but if they should be of opinion, that there had not been a continued and uninterrupted possession and ouster of the plaintiff, and those under whom he claimed, for the term of fifteen years, that then they should find for the plaintiff. The jury returned a verdict for the defendant ; and the plaintiff moved for a new trial, on the ground of a misdirection ; which motion was reserved for the consideration and advice of the nine Judges.

The case was argued elaborately, by *Sherman* and *R. S. Baldwin,* in support of the motion ; and by *I. Mills* and *Wales,* contra. But as the Judges, in delivering their opinions, reviewed the principal topics of argument urged, and the authorities cited, on both sides, it has become unnecessary to detail them here.

TRUMBULL, J. This case depends chiefly on the construction of the statutes of this state respecting the conveyance of title to real estate, and the limitations of time, within which a right of entry remains in the grantee against actual settlers and cultivators.

The case is briefly this. One *Stratton,* who had the legal estate of the land in question, by his deed, dated *July* 1st, 1786, mortgaged it to *William Bennett,* in whose hands the deed lay unrecorded, for the space of about twenty-five years. On the 19th day of *January* 1789, *Bennett,* together with one *Curtis,* (whose claim or title, if any, does not appear,) executed to the plaintiff a deed of quit-claim, which was recorded in due season. By this deed, the plaintiff's claim commences. In the same year, one *Seth Gray* entered into the premises, and with his family remained in possession till in the year 1810, when he removed and left them in the possession of his son *Joseph,* the present defendant, who held the possession ever afterwards. About the year 1800, one *Zachariah Lyon* had an execution in his favour against said *Stratton,* the return-day of which had expired ; the plaintiff had also an execution in his own favour against *Stratton,* under the same circumstances ; they caused each of these executions to be levied on the premises, as the property of *Stratton.* Both of these levies are agreed to be void. However, in the

year 1803, *Lyon*, by agreement with the plaintiff, entered on the premises, claiming them by virtue of said levies only, and demanded of said *Seth Gray*, to surrender them to himself and the plaintiff; but he refused to comply with the demand. This is the only demand ever made by the plaintiff, or on his behalf, previous to the commencement of this action. On the 9th day of *February* 1811, the original mortgage deed from *Stratton* to *Bennett*, was looked up, and recorded. On the 4th day of *April* 1815, the plaintiff brought this action against the defendant. On the trial, the defendant rested his defence on the ground that the plaintiff, and said *Stratton*, the mortgagor, had been disseised, and ousted of possession of the premises, for more than fifteen years before the commencement of the action, *viz.* from the year 1789. By the statute of this state respecting the possession of houses, lands, &c. which was passed in the year 1684, it is enacted, " That no person or persons shall, at any time hereafter, make entry into any lands, tenements, &c. but within fifteen years next after his or their right or title, which shall hereafter first descend or accrue to the same ; and in default thereof, such persons so not entering, and their heirs, shall be utterly excluded and disenabled from such entry after to be made." In the construction of this statute, it has been uniformly holden by our courts, that it respects those cases only, in which the person, who owns, or claims title, has been ousted and kept out of possession, for the term of fifteen years, by the entry and possession of some other person or persons, holding the lands adversely to his claim ; that this adverse possession must never have been interrupted or abandoned, during any part of said time ; that the owner thus disseised is deemed in law to have lost his rights by his own laches and negligence, and the person in actual occupation and possession of the land, at the expiration of that term, has acquired a title by possession ; that it is not necessary that such actual occupant should have been in possession during the whole period, but that it is sufficient to prove, that the original owner, or claimant, has been, during the whole time, ousted and divested ; that he who has thus lost his right of entry, has with it lost all right of action for the recovery of the lands ; and that, after a title is gained by such adverse possession, no enquiry can be had, respecting the original rights of the first proprietor, or claimant, and no

question made, whether he, who first seized the possession, entered by right, or by wrong, had an equitable claim, or was a mere trespasser, wrong-doer and disseisor: for the statute puts an end to all researches for prior titles, after an adverse possession for fifteen years. See 1 *Swift's System*, 337. of *title by possession;* in which the principles of law on this point are laid down with the greatest precision and perspicuity. So 2 *Black. Comm.* 196. "Possession may, by length of time, and negligence of him who has the right, ripen into a perfect and indefeasible title." By the statute 21 *Jac.* 1., possession for twenty years bars the owner of all right of entry, but leaves him to his writ of right. In this particular, our law differs from the *English.* On a writ of right, the question is, whether the plaintiff has a good, prior title, and whether the possessor for twenty years or more, entered at first, and still holds, as a wrong-doer and a trespasser: but in a possessory action, the only question is, whether the defendant can prove an uninterrupted, adverse possession, during the whole term required by statute. The point, whether he entered and detains the premises rightfully, or by disseisin, can never be brought forward on a plea of title by possession: nor can it ever be enquired of, upon such a defence, in our action of disseisin. The fact of fifteen years quiet possession, is decisive in favour of the defendant, and our law allows no writ of right.

From the record and motion in the present case, it clearly appears, that the plaintiff is barred of a recovery, unless his rights have been preserved, and the adverse possession legally interrupted in his favour, by the acts of *Lyon* or *Beardslee.*

It must be remembered, that neither *Lyon,* nor *French,* who levied separate executions on the premises, as the property of *Stratton,* gained in them any rights thereby, as their levies were absolutely void; and that *Lyon* had no other pretence of title. *Beardslee* claimed only by a conveyance from *Lyon,* by which nothing passed; and his subsequent negociations with *Seth Gray* are totally irrelative, as to the rights of *French.*

*Lyon* entered in 1803, and demanded of *Seth Gray* the surrender of the premises to himself and the plaintiff, by virtue of the title, they supposed to have been gained by their levies. He denied their right, and refused to deliver up the

possession on that demand.    It seems, that they then discovered that their levies were void ;—for *Beardslee* gave up his deed from *Lyon*, relinquished all pretensions to the land, and we hear no more of any claims, until seven years after, when, upon *Bennett's* deed from *Stratton* being found and recorded, the plaintiff claims anew on that ground.

This entry and demand is the only act, by which it is claimed, that the possession of *Gray* was interrupted.   No entry was ever made by *Stratton* or *Bennett*, or any person claiming under their rights.

But waiving these considerations, of which I do not deem it necessary to take advantage, let us suppose that *French* had actually entered on the premises at that time, and demanded the surrender, by virtue of his claim under the deed from *Bennett;* and then enquire, whether such an entry would enable him to recover seisin and possession, without procuring the deed from *Stratton* to be recorded.

A deed of lands, unrecorded, is no evidence of title, nor can be produced as such in court, against any other person, but the grantor and his heirs.   By the statute, *tit.* 162. *c.* 1. *s.* 9. it is enacted, " That no grant, or deed of bargain, sale or mortgage, made of any houses or lands within this state, from and after the first day of *March* 1709, shall be accounted good and effectual in law, to hold such houses and lands against any other person or persons whatsoever, but the grantor or grantors, and their heirs only ; unless the grant, deed or deeds thereof, be recorded at length, in the records of the town, where such houses and lands do lie." Such are the express words, and such has been the universal construction, of this statute.   Vid. *M'Donald & al.* **v.** *Leach*, *Kirby* 72.   *Willet* v. *Overton & al.* 2 *Root* 338.   *Doolittle & ux.* v. *Blakesley*, 4 *Day's Ca.* 265.

The enquiry is made, who is the owner of the soil, as all agree that it does not lie in abeyance.   I answer, *Stratton* still has the fee, his deed to *Bennett* notwithstanding, until that deed is put upon record ; and any suit for the recovery of the land must be brought in his name.   If he sell it a second time, to a *bona fide* purchaser without notice, who procures his deed to be first recorded, the fee passes by the conveyance. This proves, that the fee is still in him.

By virtue of his deed, though unrecorded, *Bennett* had right to enter, and hold the premises against *Stratton*, by force

New-Haven,
November,
1816.

French
v.
Gray.

of the statute ; and as no other person had any legal title or claim, he could maintain that right against all mankind ; or, as is stated by *Blackstone* in another case, " the conveyance gives him a good right against the grantor, and possession or occupancy confirms that right against all the world besides." 2 *Black. Comm.* 10. For whoever should sue him in an action of disseisin, must fail, for want of proving a title. This right *Bennett* never exercised.

Admit that *French* from his deed acquired all the rights of *Bennett.* In 1789, we find *Seth Gray,* with his family, in actual possession and occupation of the house and land, holding adversely to all mankind. He had disseised the owner, whoever that might be. He remained in possession, unmolested, till the year 1803. The question is, how should *French* put him out of possession ? Should he enter and attempt to hold by force, *Gray,* having been in quiet possession for more than three years, had right, by the statute against forcible entries, to detain his possession against him. *French* is put to his action of disseisin. Could he maintain it in his own name ? He must show that he has the complete legal title in himself, or he cannot recover, let the claim of *Gray* be ever so defective. He could produce a valid deed from *Bennett* and *Curtis,* but the title on record is in *Stratton.* The deed from *Stratton* to *Bennett* must be resorted to, in order to complete the chain of conveyance. Had he procured that deed, and recorded it, his title to the land would have been perfect : but the deed, unrecorded, was of no validity to recover and hold against *Gray.* It could not be produced as evidence in the case, as hath been often decided in our courts.

*French* might, perhaps, have brought the action in the name of *Stratton.* *Stratton* had a clear title on record, and could recover the premises from *Gray.* On that recovery, the way would be open for *French* to enter and possess. His own deed gave him right to hold against *Bennett,* and *Bennett's* deed, though unrecorded, was good evidence against *Stratton.* Such was the practice in the case of a purchase of land, by a deed, which proved void, because it was found that the vendor was out of possession at its date. The purchaser brought his action against the disseisor, in the name of the vendor, recovered possession, and held it by force of the covenants in his deed. 1 *Swift's Syst.* 301.

So the assignee of a bond, or a note not negotiable, must sue in the name of the assignor; and if the bond be secured by mortgage, the action for recovery of the lands must be in the name of the mortgagee. The assignee has rights in law against him, but none, except in equity, against the mortgagor.

The case of the grantee of an unrecorded deed in this state is the same, in this respect, with that of the bargainee in *England* under the statute of enrolment. Before enrolment, the fee of the land is in the bargainor; but if the deed be duly enrolled within six months from the date, the bargainee is thereupon, by relation, considered in law, as in *ab initio,* for the purpose of avoiding all intermediate conveyances, and (according to the better opinion,) of ratifying his own previous leases and grants. 2 *Inst.* 671. *Co. Litt.* 147. *b. Isham* v. *Morrice, Cro. Car.* 109. *Flower* v. *Baldwin, Cro. Car.* 217. *Bellingham* v. *Alsop, Cro. Jac.* 52. *Berry* v. *Bowes,* 1 *Ventr.* 360. 4 *Leon.* 4. *Hynde's* case, 4 *Co.* 71. It is argued, that enrolment is not required in *England,* to enable the bargainee to hold the land against a wrong-doer. To prove this point, it is said, that a deed not enrolled is valid against a subsequent purchaser with notice. But this assertion is not true, in the sense in which it is applied. If *A.* purchases by deed of bargain and sale, and before he procures his deed to be enrolled, *B.* with full notice, obtains a second deed, and has it enrolled previous to the enrolment of the deed to *A.,* in that case, if *A.* afterwards, within the six months, has his deed enrolled, he shall hold the land against *B.*; and *B.'s* deed shall be adjudged fraudulent and void: *Worseley & al.* assignees, v. *de Mattos & al.* 1 *Burr.* 474.: but if *A.* omit to enroll his deed within the six months, according to the statute, nothing passes to him by his deed, and he has wholly failed of gaining any title. *Stat.* 27. *Hen.* 8. c. 16.

So it is urged, that with us a first grantee, who neglects to record his deed, will hold the land against a second purchaser with notice, who puts his deed upon record; and therefore, recording is not necessary to gain title against a a wrong-doer. But cases of this kind are decided wholly on the ground, that the second conveyance, though first recorded, is fraudulent and void against a prior grantee.

For the grantor is clearly guilty of intentional fraud ; and if the second purchaser have notice of the first conveyance, he is a party in the fraudulent combination, and equally guilty. This is evident, because, if he had no notice, his deed, if first recorded, is valid against the prior purchaser, who has not used due diligence in recording : but in the other case, his deed being void for the fraud, is as though it had never been executed, and the first grantee shall hold the land. Such was the case of *Trustee of Camp's estate* v. *Wilford,* decided by the superior court at *New-Haven, February* term, 1782, of which I have a note taken at the trial.

I believe that one may safely assert, that no case can be found, in which both deeds were not put upon record before the trial. Wherever the point is mentioned, the question is, whether the deed first on record shall hold,—which implies the recording of the other ; and I am confident, that no lawyer, during the period of my practice, would have advised his client, the first grantee, to risk his cause, without recording his deed.

The case may be fairly stated in this manner. *A.* executes his deed to *B.,* who neglects to put it on record. *C.,* having knowledge of this omission, obtains from *A.* a second deed of the same land to himself, and procures it to be immediately recorded. *B.,* the first grantee, makes a subsequent record of his deed. On trial, the question is, who shall hold the land. *B.* produces his deed, duly executed and recorded. This shows a clear title, *prima facie,* in *B.* To oppose it, *C.* offers his deed from *A.,* subsequent in date, but first placed on the record. This must be fatal to the claim of *B.,* unless he can remove this objection out of the way. For this purpose, he proves, that *C.* had notice of his prior conveyance, and avers, that the deed of *C.* is fraudulent and void, as respects his title. The court so adjudge it. It becomes now as inoperative, as though it had never existed, and *B.* recovers the land on a clear title, by his deed duly recorded, and as to which all obstructions from the intermediate claim are now completely removed.

Such is clearly the course when the first grantee brings the suit : yet if the question could be brought up by him, without recording his deed, and perhaps it might by way of defence, in case he should have got into possession of the land after the execution of the second deed, and thereon the subsequent

grantee should sue him in ejectment, I should say, that the second deed was fraudulent in its making, and so it must always continue; that courts of law will recognize and protect equitable rights, as well as legal; and that the second grantee could never recover against the first, by a title founded on a fraudulent deed. Vid. *Bulkley & al.* v. *Storer,* 2 *Day's Ca.* 531. 1 *Swift's Syst.* 309. *Allen* v. *Holkins,* 1 *Day's Ca.* 18. *Willet* v. *Overton et al.* 2 *Root,* 345.

But such a case never did, and probably never will, occur; for no man, when sued in an action of disseisin, would omit any longer to place his deed upon record.

It is agreed, that the words of the statute expressly declare, that a deed gives no right in the land against any other person or persons whatsoever, than the grantor and his heirs, unless it is recorded. But it is contended, that this cannot have been the meaning of the legislature, who passed it; and it is now to be explained away, by a construction, never till within a few years heard of in our courts, and never as yet sanctioned by any decision;—and it is said, that this is necessary to prevent it from operating in favour of trespassers and wrong-doers.

We always tread on unsafe ground, when we undertake to conjecture that the intention of the legislature, in passing an ancient statute, must have been different from its plain and literal meaning, and are very liable to mistakes, in deciding what was the old law, the mischief, and the remedy, unless when we are aided by a cotemporaneous, or at least an early, construction, put upon it by the courts. This act was passed in the year 1708, and its origin may be traced to 1650. We have no reports before 1786, except a few scattered cases, noted at the beginning of *Root's Reports.* I can speak from my own knowledge since the year 1774, only. It was, at that period, considered as settled law, that a deed unrecorded gave no right in the land against a stranger, and was no evidence of title, except against the grantor and his heirs; but that when duly recorded, it put the grantee into immediate seisin and possession of the land, superseded the necessity of livery of seisin, and enabled the grantee to sustain actions of trespass and disseisin, without making proof of his actual entry; 1 *Swift's Syst.* 307, 308.—but that, until recorded, it had no legal effect, except between the parties, and then operated as a bar to the claim of the grantor, and by force of the cove-

*New-Haven,*
November,
1816.

French
*v.*
Gray.

uants it contained. No lawyer then thought of offering to the court an unrecorded deed, for any other purpose ; and it was the first direction to a client, to see that his title deeds were duly recorded.

At that time, the only disputed points, relative to this subject, were these ; first, what should be accounted a reasonable time for recording a deed, beyond which, if it were neglected, the record should be of no avail, unless its being recorded was prevented by fraud—as the statute had omitted to fix the period, as was done in *England* in the statute of enrolments ; the second point arose out of the tenth section of the statute, and it was then doubted, whether the record was completed in law, from the time, when the town-clerk minuted on the deed, that it was *entered for record*, or only from the time, when it was in fact recorded at length in his books ; the third question was, whether the deed, being complete on the record, should have relation to its date and delivery, so that the grantee should be considered by law as in *ab initio*, for the purpose of maintaining an action brought, or confirming a conveyance given, before the recording of the deed. *Hartmyer* v. *Gates,* 1 *Root,* 61. *Ray* v. *Bush,* 1 *Root,* 81. *Moore* v. *Watson,* 1 *Root,* 388. *Franklin* v. *Cannon,* 1 *Root,* 560. *M'Donald et al.* v. *Leach, Kirby,* 72. *St. Andrews* v. *Lockwood,* 2 *Root,* 239. *Welch* v. *Gould & al.* 2 *Root,* 287. *Willett* v. *Overton & al.* 2 *Root,* 338.

I cite these cases, as uncontrovertible authorities, to show that from the year 1774, when *Hartmyer's* case was tried, to the year 1797, when the case of *Willett* v. *Overton* was decided, it was the settled construction, that no person could support an action for the recovery of land, by force of any deed, unless that deed was duly recorded before the trial. In some of these cases, the principle is directly laid down ; in most of the others, no doubt could have arisen, had the courts supposed the recording unnecessary ; in *Willett* v. *Overton,* the question was, whether, as the recording of the deed at length had been totally prevented by fraud (although it had been lodged with the town-clerk, and minuted upon as *entered for record*, before it was taken away and destroyed) a court of law could give the remedy in that particular case, notwithstanding this defect in the title, or whether the party claiming must be driven to seek his only relief in chancery.

In the year 1780, before the superior court in *New-Haven* county, at an adjourned session in *December,* two cases were decided, which depended on the application of the doctrine of relation. By the advice of the court, special verdicts were found, and the point elaborately argued by the ablest counsellors at the bar. All the *English* authorities relative to the doctrine, which were then extant, were produced. I took copious notes of both cases, at the trial, from which I am enabled to state them with precision. The first case was

### KIMBERLY *against* LEAVENWORTH.

*Leavenworth* had an execution against *Henry Williams.* On the 11th day of *April,* he caused it to be levied on the land of *Williams,* and on the same day, conveyed the land by deed to *James A. Hillhouse* Esq., and took back a lease of it to himself. This deed was immediately put on record. On the 14th day of said *April, Leavenworth* completed his levy, by appraisement, return and recording, agreeable to law. As soon as the levy was thus completed, *Kimberly* levied an execution in his favour against *Leavenworth* on the land, and brought his action of disseisin. The court decided, that the property of the land well passed to *Hillhouse,* by the deed; that *Leavenworth* was in, by relation, from the first act of levying; and gave judgment for the defendant.

The report of the other case, is as follows.

### JOSHUA CHANDLER *against* YALE BISHOP.

On special verdict, the case was this. *Chandler* purchased the land in question of *Bishop,* by deed duly executed and recorded, but suffered *Bishop* to remain in possession. Then *Chandler* gave a deed of the land to *James Jauncy,* which was also duly recorded. Afterwards, *Jauncy* executed a deed of quitclaim to *Chandler. Bishop* still continuing in possession, *Chandler* sued him, in this action, for the surrender of the land. After the action brought, and just before the trial, *Chandler* put his deed from *Jauncy* on record.

It was agreed, both by the court and the bar, that *Chandler* could not have maintained his action, without recording his deed; and the sole question was, whether his deed from *Jauncy,* being now recorded, should have relation to the time of its date and delivery, so as to make him in possession *ab initio,* and capable of bringing an action, immediately after the deed was executed. For the defendant it was argued,

that the doctrine of relation takes place only as between the parties, to prevent any mesne incumbrances by the grantor, but cannot affect the interest of a third person ; much less shall it be carried so far as to make one a disseisor, who was not privy to the transaction.

*Sed per Curiam.* The deed, after recording, has relation to the delivery, and the plaintiff was in *ab initio,* for the purpose of bringing his action of surrender.

Judgment for the plaintiff.

These actions were tried before the Honourable MATTHEW GRISWOLD, Chief Justice, and DYER, SHERMAN and PITKIN, assistant judges. The principle was considered as finally settled, and was afterwards constantly recognized by the courts. *Kirby,* 72.

As to the importance of this statute, and its operation on our titles to land, I shall cite some passages from *Swift's Syst.* our first elementary treatise of acknowledged authority ; *vol.* 1. *page* 307. After stating that it is one of the requisites of a deed, that " it must be recorded," and reciting the words of the statute, the writer proceeds thus : " The regulation adopted by this statute is founded in the highest wisdom and policy, and has a most effectual operation to reduce the titles to things real to certainty, and lessen the sources of litigation. The records and files of the towns will shew to every person, that is pleased to enquire, in whom is vested the legal title to lands, and inform him whether he can purchase with safety. This renders all conveyances of lands a matter of much more public notoriety, than the antient method of livery and seisin, or corporeal investiture ; and as it makes that practice wholly unnecessary, it is probably the reason of its disuse." The author pursues the same subject in page 313. " In this state, the law requiring the recording of deeds, superseded the necessity of an actual delivery of possession of the premises. For as this is a much more effectual mode to make the transaction known and public, it would be superfluous to continue the common law practice of delivery of possession." See *Chalker* v. *Chalker,* 1 *Conn. Rep.* 87. & *seq.*

The intention of the legislature was to oblige every man to record his deeds, by the risk of losing his title under them by his neglect. But by the construction now contended for, instead of being founded in the highest wisdom, it

*New-Haven,*
November,
1816.

French
*v.*
Gray.

would become one of the most nugatory statutes in our code. The clause, which declares an unrecorded deed valid against the grantor and his heirs, would be useless, for such a deed would be equally valid, if the statute had never existed ; and the operation of the law would be confined to the solitary case, where an insolvent swindler endeavours to defraud, by giving a second deed to an honest purchaser, without notice of the first, which happens not to be recorded,—a case that is not heard of in our courts ten times in a century, and which there is little reason to suppose was ever in the contemplation of the legislature, who first passed the act.

The necessity of recording long leases, according to the stat. *tit.* 162. *c.* 2. in order to complete the title, was never doubted, nor that of recording the levy of an execution, to enable the creditor to hold the land set off by it : yet I see not why those statutes are not equally liable to be explained away by a similar construction.

It is still contended, that our " acts concerning possession of lands, and for quieting of men's estates," however plain and express their language, must never be so construed, as to protect trespassers and wrong-doers.

But a person, who has held possession of lands, during the period required by the statute of limitations, is not, in the eye of the law, a wrong-doer or a trespasser. Even before that period has fully elapsed, according to *Blackstone*, his mere possession is *prima facie* evidence of his right, and his title, though yet imperfect, is gradually ripening to perfection. 2 *Black. Comm.* 196. When that period is completed, he has acquired a good, indefeasible title, by possession,—a title by which our estates are quieted from suits at law, and the greater part of the lands in this state are secured ; for few landholders can trace their titles to any original grant, and fewer still can make their present lines, boundaries, and number of acres, compare with their antient surveys.

By a statute of this state, passed in *May* 1667, it was enacted, that all persons who then stood possessed of lands, claiming them in their own right in fee, and who should not be interrupted by some other person, laying claim thereunto, and prosecuting such claim, sometime betwixt the publication of that act and the last of *November* 1668, should have right to enter and record the same to themselves, their heirs, and assigns, and by that record should have good title to hold

the same firm to themselves, their heirs and assigns forever. Our statute giving title by fifteen years exclusive possession, and ouster of the owner, was passed in *May* 1684.

In tracing out the origin of these statutes, we find that the legislature of *Massachusetts,* in 1657, passed an act, confirming an absolute title in fee simple, to all persons, who had possessed and occupied, as of their own right in fee, any houses or lands, from the year 1652, and should so continue, without suit or disturbance, for five years from and after the 20th of *May* 1657 ; and a second act in 1697, confirming the title in fee to all persons, who had possessed lands in the same manner, exclusively, from the first of *October* 1692, and should continue so to possess, without molestation, till the first of *October* 1704. See *Acts and Laws of Massachusetts, Green's* edit. in 1726, *p.* 90, and 91.

These statutes directly grant and establish an indefeasible title by possession in the actual occupant (or *disseisor,* if you please) against any legal owner, by original grant or deed, who shall have suffered himself to continue ousted and dispossessed, and shall not make his entry, or prosecute his claim to effect, within the times specified in the several clauses of limitation.

Our statutes concerning the possession of lands, and the necessity of recording deeds, in order to secure the title, were enacted at an early period, and designed for the encouragement of actual settlers. Lands uncultivated were then of little value, as is the case in all new settlements ; and the man, who, without previous legal title, entered unmolested, cleared, cultivated and enclosed a new farm in the wilderness, rendered it productive by his labour, or tenantable by the erection of a comfortable cottage, was justly considered as having a greater equitable right in the land, on account of his betterments and improvements, than he who had merely obtained a title to it, by grant or purchase, in its wild state, and had never taken any steps towards its clearing and cultivation. The spirit of the times was on the side of the actual settler ; and our ancestors could no more endure, than the shepherd in *Virgil,* that a mere grantee should demand their possessions, enjoy the fruit of their labours, and proclaim with authority,—*Hæc mea sunt ; veteres migrate Coloni !*

I am of opinion, that no new trial ought to be granted.

French
*v.*
Gray.

In this opinion EDMOND, SMITH, BRAINARD and BALD-
WIN, Js. severally concurred.

SWIFT, Ch. J. In this case, it is agreed, that if the
plaintiff, when entry and demand were made, had title to the
land, this would prevent the defendant from acquiring title
by possession: so that the question is, whether a title to
land can be acquired by an unrecorded deed. The court on
the circuit were of opinion, that no title was acquired till the
deed was recorded. This must depend on the construction
of the statute respecting deeds.

This statute requires, that all grants of lands should be in
writing, subscribed by the grantor, attested by two witnesses,
and acknowledged before an assistant or justice of the peace,
before they shall be accounted to be complete. When this is
done, such deeds are complete, and the title passes, unless
something further is required by statute.

This statute further enacts, that no grant, unless recorded,
shall be accounted good and effectual to hold the land against
any person but the grantor, and his heirs only. This is a
most explicit provision, that a deed, though unrecorded, is
good against the grantor and his heirs, and, as it respects
them, renders unnecessary the recording of it. But the
question still remains—against whom is an unrecorded deed
void? It is admitted, that a literal construction would render
it void against every body, excepting the grantor and his
heirs. But why should a deed unrecorded be declared void
against strangers and trespassers, who have no colour of
right? Is there any reason for this provision, except for the
benefit of subsequent purchasers or assignees, who may have
an interest?

To ascertain against whom deeds not recorded were inten-
ded to be void, we must consider the object and the design
of the legislature, the evil that existed, and the mischief to
be remedied.

The common law does not require a deed to be recorded;
and one that is prior in date will operate against a subse-
quent one, on good consideration, and without notice. It
will readily be seen, that this opened the door to the practice
of many frauds. Deeds were, therefore, required to be re-
corded, to give notice to purchasers, and prevent imposi-
tion. They might have valuable rights to be affected. But

*New-Haven*,
November,
1816.

French
*v.*
Gray.

strangers and trespassers, having no colour of claim, can have no rights to be protected; and not the shadow of a reason can be given, why an unrecorded deed should be valid against the grantor, and void against a trespasser.

Courts, therefore, in the construction of this statute, considering the sole object to be notice to purchasers, have decided, that a deed unrecorded is void only against the assigns of the grantor; for they alone can want notice,— they alone can have interests to be affected. It has also been repeatedly, and uniformly, decided, that an unrecorded deed is valid against a subsequent deed, though recorded, if the purchaser had notice of the existence of the prior deed. This conclusively settles the point, that a deed not recorded is good against every body but the assigns of the grantor; for if it is good against a subsequent purchaser with notice, it must *a fortiori* be good against a trespasser, who can have no possible claim of notice.

Our statute is different from the statute of enrolments in *England*, 27 *Hen.* 8. *c.* 16. There it is declared, that no land or hereditaments shall pass, whereby any estate of inheritance or freehold shall be made, or any use thereof, by reason only of any bargain and sale, except the bargain and sale be made by writing, indented and enrolled in one of the courts of *Westminster*, &c. within six months after the date of said writing. But notwithstanding the positive requirement of the statute, it has been there decided, that a deed not enrolled is valid against a subsequent purchaser with notice.

In *Massachusetts*, it is required by statute, that a deed must not only be signed, sealed and acknowledged, but also recorded, to pass the land; yet it has been decided, that the provision for registering conveyances is to prevent fraud by giving notoriety to alienations; but if the second purchaser has notice of the first conveyance, the intent of the statute is answered, and his purchase afterwards is a fraudulent act. This clearly shews, that courts have never held, that the recording of the deed is essential to the transfer of the land. *Norcross* v. *Widgery*, 2 *Mass. Rep.* 506.

But where the deed is unrecorded, a subsequent purchaser, without notice, shall hold the land, not because the grantor had a title, but because the unrecorded deed is then rendered

void, to prevent a fraud and imposition upon such subsequent purchaser.

If the fee of the land does not vest in the grantee, when the deed is unrecorded, it may be asked, where is it? It cannot be in the grantor; for the deed is valid against him and his heirs: and the grantee could maintain disseisin against him, without recording it. If it be said, that the deed is good against the grantor and his heirs, and not any body else, then the consequence is, that the grantee has a good title against the grantor, who once had right, but not against strangers, who never had any rights; and that the grantor has no title against the grantee, but a good one against strangers. Here would be two distinct, co-existent titles in fee-simple in different persons. If the fee passes from the grantor, and does not vest in the grantee, then it would be in abeyance.

To avoid these absurdities, it is held, that the fee does not pass from the grantor till the deed is recorded; but as it is conceded to be operative against him, it is said, that it is good by way of estoppel; that is, the grantor is estopped to deny that he has conveyed the estate to the grantee. But the statute explicitly declares an unrecorded deed to be valid against the grantor and his heirs. How, then, can it be said not to pass the title, but only to operate as an estoppel against the grantor! It may, with equal propriety, be said, that deeds, when recorded, never convey the estate, but only operate as an estoppel on all the world to deny the estate has been transferred.

An estoppel is where, by record, contract, or some act, the party is estopped from alleging the truth. If a man should execute a deed of warranty of land, which he did not own, and should afterwards purchase the same land, he would be estopped, by his deed, to say he did not own the land when he made the conveyance. But how can a man, by executing a deed, be estopped from saying, that the grantee did not afterwards procure it to be recorded? Sir *Edward Coke* says, " where the verity is apparent in the same record, then the adverse party shall not be estopped to take advantage of the truth; for he cannot be estopped to allege the truth, when the truth appeareth of record." *Co. Litt.* 352. *b.* If the grantee should claim the land of the grantor, he would be bound to produce his deed; and if unrecorded, the fact would

*New-Haven,*
November,
1816.

French
*v.*
Gray.

be apparent ; and by the same reasoning, the grantor could not be estopped from alleging the truth, that the deed had not been recorded ; and if that was essential in law to convey the estate, he might then say no title had passed.

But admit an unrecorded deed to be good against the grantor, and his heirs, by way of estoppel ; this removes no difficulty. The grantor will then have the record title, and can maintain actions, and hold the land against strangers, but not against the grantee. The grantee will hold the land, and can maintain actions against the grantor and his heirs, but not against strangers ; nor can he make entry on the land to prevent a trespasser from gaining a title by possession. No construction ought to be given to a statute, which will involve such manifest absurdity. On the other construction, that an unrecorded deed is good against every body, excepting the assigns of the grantor, all is plain and consistent. The grantee has a complete title ; but if he neglects to record his deed, then the statute declares it to be void against a subsequent purchaser without notice. The fee is in the grantee till the time of such second conveyance ; and then, by operation of law, he is divested of his right, and it is vested in the subsequent purchaser.

But it is said, that this is repugnant to the letter of the statute, and that we are bound to give statutes a literal construction. No proposition is more incorrect than this. It is impossible that the legislature, in framing general laws, should be able to foresee all the consequences of their regulations ; and it is well known, that a literal construction would often produce effects very different from their intention and calculation. To obviate this, courts have been obliged to adopt certain rules in the construction of statutes very different from a literal meaning, but consonant to the real intent of the legislature. These rules are become a part of the law of the land, and are as much to be regarded as statutes. Among a great number, I will only mention the statutes of limitation ; against frauds and perjuries ; and against fraudulent conveyances. Courts, pursuing the object and intent of the legislature, have, on the basis of these statutes, created a system of principles, highly conducive to the public good, many of which would vanish on a literal construction. If such a rule is to be applied to the statute in question, it must be applied to every one ; and there is no innovation that

French
*v.*
Gray.

would produce a more extensive and mischievous effect upon our jurisprudence. But it is too late to contend for this. We are bound to take the law as we find it ; and decisions upon statutes have the same obligation as the statutes themselves. We are not now at liberty to say, that a second purchaser having notice of the prior deed, can hold the land against it, because it was not recorded. If we depart from this decision, we break down first principles. If we abide by it, we sanction the doctrine for which I am contending ; for if the first deed be valid against the second, it must be on the ground that the title to the land passed by it, though unrecorded.

Further, this case proves the injustice of a literal construction of the statute. It is now to be decided, that the entry of the plaintiff, because the deed to his grantor was not recorded, did not save his right against the possession of the defendant ; and thereby a stranger and a trespasser is enabled to cheat the honest proprietor out of his land.

I am of opinion that a new trial ought to be granted.

GODDARD J. was of the same opinion.

HOSMER, J. If the plaintiff has a right of entry, it is perfectly clear, that the defendant has obtained no title by possession. The entry of *Beardslee*, with the assent of the plaintiff, in the year 1801, interrupted the continuity of possession ; and thus divided, there was not a sufficient length of occupation to give title under the statute. The entry of *Beardslee* was, in legal construction, the entry of *French. Co. Litt.* 245. *b.* 258. *a. Crowther* v. *Ramsbottom & al.* 7 *Term Rep.* 650, 654. If the person last named had the right of entry, the entry of *Beardslee* gave him seisin, put him into the immediate possession, and made him the complete owner of the premises. 3 *Black. Comm.* 175. *Co. Litt.* 15.

Whether the unrecorded deed to *Bennett* prevented the acquisition of title by the plaintiff, is the only disputable question.

It is provided by statute, that no grant shall be effectual to convey title, except against the grantor or his heirs, unless it is recorded at length. *Stat. tit.* 162. *c.* 1. *s.* 9. The defendant contends for the literal construction of this law. If the act is remedial, it must be expounded, not according to

New-Haven,
November,
1816.

French
v.
Gray.

its letter, but in suppression of the mischief, and promotive of the object at which it was aimed. The intention of the law-maker must be accomplished. On this principle it is, that a matter declared by statute to be *void*, has, in some instances, been considered as voidable only ; and leases which the law literally prohibited to be made for more than twenty-one years, when made for a longer period, have been adjudged valid. *Lincoln College's* case, 3 *Coke*, 59. 60. 1 *Black. Comm.* 87. On a subject so familiar, it is alone necessary to observe, that in pursuing the object of a law, the construction sometimes enlarges the letter, sometimes restrains it, and sometimes is contrary to it. *Stowel* v. Lord *Zouch, Plowd. Rep.* 365. *Eyston* v. *Studd, Plowd. Rep.* 465, 467. 1 *Black. Comm.* 87. *Heydon's* case, 3 *Coke*, 7. The *King* v. *The Inhabitants of Everdon,* 9 *East,* 101. Of the construction which goes beyond the letter, it may be observed, that the statute of 9 *Edw.* 3. against executors, by an equitable exposition, has been held to comprise administrators ; and the act of 13 *Edw.* 1. respecting the bishop of *Norwich,* has always been extended to the bishops generally, because they were equally within the reason of it.

Instances of a restrictive interpretation, narrowing the literal operation of a statute, have been frequent. The act of *West.* 2. regards, in the terms of it, *all bailiffs and receivers,* but it is held not to extend to *an infant* ; and criminal laws of the most comprehensive expression, are not considered as including idiots or madmen. At the same time, a drunkard, whose powers of mind are, for the moment, utterly extinct, is embraced by the law.

By 1 *Edw.* 2. the breaking of a prison, by a prisoner confined for felony, is made felony ; but if the prison is on fire, and in order to save his life, the prisoner breaks it, this act, though directly contrary to the letter, is deemed to be no violation of the statute. *Reniger* v. *Fogossa, Plowd. Rep.* 13. All who have been abettors of an appeal, on which the party has been acquitted, by the statute of *West.* 2. *c.* 12. are made liable to damages ; but the son who abets his mother, although within the words of the act, is not within the law. *Partridge* v. *Strange & al. Plowd. Rep.* 88. 2 *Inst.* 84. And in *The King* v. *The Inhabitants of Everdon,* 9 *East* 101. an order of removal, in opposition to the plain words of a statute, was affirmed. " The letter of the statute" says *Grose,* J.

" is sufficiently plain, according to the common understanding of the words ; but that would militate so strongly against the spirit and object of it, that we cannot be governed by the letter, without entirely defeating this very wholesome law." On the same ground, though in pointed opposition to the letter of the law, it has been established, that the treasurer of a state, a collector of taxes, or an executor, may sell an estate which is in the possession of others.

In fine, the most universal and effectual way of discovering the true meaning of a law, is, by considering the reason and spirit of it, or the cause which moved the legislature to enact it. For when the reason ceases, the law itself ought, likewise, to cease with it. 1 *Black. Comm.* 61.

It cannot, with any fairness, be pretended, that the law under discussion is a mere arbitrary regulation ; a positive institution, without any reason. It must be admitted, then, to be a *remedial* act, and the letter of it can only so far govern the construction, as it comports with the intention of the legislature. What, then, was the cause which moved the legislature to enact it ? It has been said, that the statute intended to give a substitute for livery of seisin ; and that the recording of the deed is the equivalent. I cannot, at all, accede to this position. So far from this, there is not, in point of legal operation, any difference between unrecorded deeds, whether there was, or was not, livery of seisin. A plain fact will produce conviction on this subject. The subsequent purchaser, with notice of a prior grant for a valuable consideration, although the first deed was not recorded, acquires no title, and the prior grantee is the legal owner. *Willet* v. *Overton & al.* 2 *Root*, 338. It has been determined, that a court of law, on the strength of these facts, will recognize the title of the first grantee. This is in perfect accordance with the decisions in chancery, in relation to deeds required by law to be enrolled or registered. " The rule under the stat. of *Hen.* 8. *c.* 16. ever has been, that enrolment, by a subsequent bargainee having notice of a prior bargain, for a valuable consideration, whether by actual agreement to pass immediately, or by articles, is not material, for he is equally affected with that notice as if his conveyance was by feoffment, lease and release." 1 *Ves.* 67. To the same effect are the decisions under the acts of parliament for the registering of deeds and wills. The purchaser with notice of an existing, unreg-

New-Haven,
November,
1816.

French
v.
Gray.

istered deed, is barred by it; and the prior grantee will be relieved against the subsequent purchaser, whose deed is enrolled. *Sugd.* 457. It follows, then, that the statute concerning the recording of deeds, was not in lieu of livery of seisin. If it were, notice of a prior grant unrecorded, would affect a subsequent purchaser, just as much as the knowledge of feoffment without livery at common law, would affect a subsequent feoffee with livery; that is, it would have no manner of operation. But it has an important effect. As to the subsequent grantee with notice of a prior deed unrecorded, this notice has the same operation, as if the prior deed had been put on record. It is, therefore, unquestionable, that the substitution of a matter of publicity by record, was not for the supposed reason; that is, the provision of an equivalent for livery of seisin.

It has been contended, that until the deed is recorded, nothing but the use passes by the bargain and sale, and the freehold is still in the bargainor. This is incorrect. He who has the use, is entitled to the possession, except so far as he is restrained by positive law. *2 Black. Comm.* 337. *Bacon* v. *Taylor, Kirby,* 368. This principle necessarily results from the stat. *Hen.* 8. *c.* 10. for transferring uses into possession; the law of which was brought over by our ancestors, gave birth to the deed of bargain and sale, which has been generally in use, and has been confirmed by judicial determinations. *Bacon* v. *Taylor, Kirby,* 368.

The only impediment to the seisin of the bargainee, is the law requiring deeds to be recorded. The record is not indispensable to the transmission of the freehold. If this were not true, notice of a prior grant could make no difference to the subsequent bargainee. But it does make an essential difference. The prior grantee, as against the person purchasing with notice, although his deed is unrecorded, has a complete title. It is, therefore, incorrect to say, the recording of the deed is necessary, to transfer the freehold to the bargainee, and until this act, that the use remains in the bargainor. This proposition takes for granted, that the recording of a deed is the legal substitute for livery of seisin, and has been refuted before.

The cause which moved the legislature to enact the law for recording deeds, has, in my opinion, been much misapprehended.

The law for transferring uses into possession, in lieu of the notorious transfer of property by feoffment, and delivery of possession in a public manner, had given rise to secret forms of conveyance. The greatest estate might be granted in a private room, by the deed of bargain and sale, lease and release, and other forms of transmission, and no person, except the parties to the transaction, would have the most remote suspicion of the fact. It would obviously result, that the person who had once sold his estate, might sell it again, and the unprincipled would be under the temptation of committing a fraud, which could be perpetrated with ease and success. Hence, arose the statutes concerning the enrolment, registering and recording of deeds. They were intended to prevent fraud, and protect the *bona fide* purchaser of real estate, from prior secret conveyances. *Sugd.* 471. But, in respect of those, who had knowledge of previous grants, they were in no danger of fraud. They were not in the view of the legislature. They wanted no protection. Of consequence, they are left as they were before the law was enacted. If they know of a grant, they have all the benefit that a record could give ; and as to them, the deed is considered as if it had been recorded.

Such a construction, however, it is now contended, shall be put on the statute, as shall protect disseisors and trespassers, who have no higher plea than this, that they have wantonly entered on the property of some person, without the shadow of right. In respect of such persons, it is said, that an unrecorded deed, of which they had no notice before their transgression, cannot legally operate. Then it must be insisted, that they are within the protection, deliberately and intentionally provided for them, by the law-makers. This supposition is next to impossible. To pass an act for the protection of such persons, would be for the encouragement and reward of transgression. No law-maker can justly be considered as having done this, unless he regarded torts with a favourable eye, and sympathised with the wrong-doer. The construction contended for, in my judgment, is wholly inadmissible. I am, therefore, of opinion, that the protection of the statute for recording deeds, must be restrained to the *bona fide* purchaser, without notice of a prior grant ; and that, as against the defendant, a mere tort-feasor, the plaintiff has a legal title. This, I believe, is a construction of the

statute in reference to its object, and complying precisely with the legislative intent.

I would advise a new trial.

New-Haven,
November,
1816.

French
v.
Gray.

GOULD, J. I am perfectly satisfied, that the direction to the jury was wrong. Indeed, I have not been able to bring my mind to doubt upon the subject, for a moment.

As the deed from *Stratton* was recorded, before the suit was brought, the plaintiff's title is complete, according to any view that has been taken of the case, on either side, unless he is barred by the statute of limitations. In my judgment, his right, as against a *tort-feasor*, would stand upon the same ground, if that deed had never been recorded : but it being actually on record, his right of recovery is, confessedly, established, unless he has lost his title.

Is he barred, then, by the statute of limitations ? This seems imposssible : for he not only entered, but held possession, for a considerable time, within fifteen years before the action was commenced. It is contended, however, that this entry and possession cannot avail him, 1st, because he had, at that time, no right of entry—the first deed being, then, unrecorded ; and, 2ndly, because, if he had, he still actually entered under a distinct claim of title, which he then supposed to be good, but which has proved defective. How the latter consideration can make any difference in the case, I am unable to comprehend. For the *ouster* was equally interrupted, and the act of taking and holding possession, by the plaintiff, was the same, under whatever claim he entered. And where the possessory right to property is united with the actual possession, courts of justice are not to enquire whether the party *reasoned* correctly, or not, as to the preferable evidence or ground of his title, or as to the comparative strength of his different claims. And hence it is, that a defendant in trespass, may justify under *any* sufficient title, though he entered, claiming under a different one. *Crowther* v. *Ramsbottom & al. 7 Term Rep.* 650.

To return, then, to the first objection :—had the plaintiff a right of possession, at the time of his entry ? If he had not, it is difficult to understand, how he can be barred by the adverse possession of the defendant, or others. That he should have had a right of entry, for the purpose of being *barred* by disseisin, but none, for the purpose of making an

available entry, to *preserve his title,* is to me wholly unintelligible. But to state the argument, as I suppose it is intended to be understood, (for I am disposed to give it its full effect,) it stands thus : *Stratton's* deed, while unrecorded, did not transfer the title, even as against wrong-doers ; and of course, the right of entry, even as against them, remained in *him :* but *he* was barred by a fifteen years' continued *ouster :* therefore, the plaintiff, claiming under him, is, by necessary consequence, also barred. This I believe to be a fair representation of the argument. But the main proposition, which lies at the foundation of it, I wholly deny. For whatever may have become of the right of possession, it could not, after *Stratton's* deed was given, be in *him :* since, by the very terms, as well as the plain reason and acknowledged construction, of the statute, his deed, though unrecorded, was " good and effectual," as against " *himself* and his heirs." Stat. *tit.* 162. *c.* 1, *s.* 9. And if the right of entry was not in him, it was, of course, in the plaintiff ; unless we adopt the absurd conclusion, (equally decisive, however, against the defendant,) that it was in *no* one. For it confessedly was not, then, in the defendant ; and it is not claimed to have been in any stranger. And if the plaintiff had then the possessory right, he must have lost it, if at all, by *disseising himself !* For the period of his own possession is computed, to make out the fifteen years' disseisin, under which the defendant claims.

But it is urged, that we are bound down to the *letter* of the statute ; and that, therefore, a deed, not recorded, conveys no title even as against wrong-doers : because, by the terms of the act, such a deed is not good, *except* as against the *grantor and his heirs.* This is, certainly, a novel rule, for the construction of remedial statutes ; and, moreover, directly opposed to an old one, universally recognised, as I have supposed, by courts of justice, in all times. *Qui hæret in litera, hæret in cortice,* is a maxim, as ancient as any rule of construction, with which I am acquainted. Statute law, it is to be remembered, is not penned in the language of special pleading : and in expounding remedial statutes, to adopt a construction, strictly literal, would be, in almost every instance, to defeat the plain intention of the legislature, and wantonly to abrogate all the great, cardinal rules, prescribed in our books, for the interpretation of written law :

New-Haven,
November,
1816.

French
v.
Gray.

rules, founded in the highest wisdom, and approved by the experience of ages. The objection is, merely, that the exception in the statute, makes no express mention of wrong-doers. It would have appeared to me, I confess, very extraordinary, if they had been expressly mentioned. For how could it be expected, that a legislature, in establishing a mere rule of priority, between different claims of *title*, should formally provide, that a person claiming under the acknowledged owner of land, by a deed, confessedly valid, as against *him*, should have a right to hold against a *stranger*, having no pretence of title at all ! Such a provision would have been as superfluous—I might almost say, as ridiculous—as it would be expressly to enact, that the true owner of property shall be, by law, entitled to hold it, against all persons, who have, confessedly, no colour of claim to it.

The reason and spirit of the statute are perfectly obvious. It is eminently one of those acts, of which the true construction is to be found by recurring to " the old law, the mischief, and the remedy." By the old law, (the law, as it stood, before the act was passed,) the first grantee held, to the exclusion of all subsequent purchasers of the same subject, either by deed or execution, though the latter had no notice of the prior conveyance. The mischief was, that such honest purchasers were liable to be defrauded, by former secret conveyances, for want of notice. And the remedy intended was, to furnish them with the means of obtaining the requisite notice, through the medium of town-records ; or rather, to oblige the prior purchaser to furnish such means of notice, or run the risk of losing his prior title. To this end, it was enacted, that no deed, &c. of houses or lands, should be good and effectual, against any *other*, than the *grantor and his heirs*, unless it were recorded. As between the *grantor and grantee*, then, a deed, not recorded, is confessedly good. It has, of course, as between the *parties*, the same effect, since the statute, as it would have had before : that is, the grantee takes the place of the grantor, and has title against all persons, against whom the grantor would have had it, if he had not given the deed. Against whom, then, could *Stratton* have holden, if he had never executed the deed in question ? Why surely, against all wrong-doers, and indeed, against all persons whatever, except such, as might afterwards *acquire title* under him. Precisely such, of course, were the rights of

*New-Haven,*
November,
1816.

the plaintiff, at the time of his entry : that is, his title was complete, except as against those, (if *such* there were,) who might have acquired subsequent title, by deed, or otherwise, from *Stratton,* the original mortgagor ; those, in other words, for whose protection the statute was made. Can any one suppose, that it was any part of the object of the statute, to protect mere professed *trespassers* against fraud, from prior unrecorded titles ? The supposition would involve a plain absurdity. As to them, the rights of all parties in interest, must remain, as at common law. I am, therefore, clearly of opinion, that a new trial ought to be granted.

New trial not to be granted.