# ISRAEL ALDEN
*v.*
# JOHN GARVER.

1. WHAT RIGHTS PASS BY MORTGAGE OR DEED.—A party having purchased lands, most of the purchase-money payable at a subsequent day, mortgaged the premises to a third person. After this mortgage was recorded, the mortgagor and his vendor rescinded their contract, the latter selling and conveying the lands to another person. *Held,* that whatever right the mortgagor had in the premises at the time he executed the mortgage, passed thereby to the mortgagee, and no more. That was simply a right to purchase the property for the consideration stipulated in the contract of purchase.

2. Even if the mortgagee had taken an absolute conveyance instead of his mortgage, he would have acquired no more than a right to receive a conveyance from the original vendor, or his grantee, upon payment of the purchase-money.

3. SUBSEQUENT PURCHASER—*his rights.* The party purchasing from the original vendor, after such mortgage was recorded, took the premises subject to the rights of the mortgagee, as above described. He also held as good a position as against the mortgagee as his vendor held before the original contract of sale was rescinded.

4. MERGER—*prior lien.* The prior lien held by such original vendor upon the premises, for the purchase-money, was not merged in the contract of rescission, so as to give his vendee's mortgagee a first lien, even as against such subsequent purchaser.

APPEAL from the Circuit Court of Ogle County, the Hon. JOHN V. EUSTACE, Judge, presiding.

On the fourth day of October, 1856, William C. Prouty, being the owner of certain lands in Ogle county, entered into a contract in writing for a sale of the premises to Almon Benton, for the sum of $8,500, the greater portion of which was made payable in annual installments, the last falling due on the 1st of January, 1867.

On the 1st day of December, 1856, Benton, being then in possession of the premises under his contract of purchase from Prouty, executed and delivered to John Garver, a deed of trust thereon, to secure about the sum of one thousand dollars which he was owing Garver. This deed of trust was filed for record in the proper office on the 13th of February, 1857.

On the 6th of November, 1857, Prouty and Benton rescinded their contract for the sale of the lands, none of the deferred payments having been met. Benton thereupon conveyed the premises to Prouty by quit-claim deed, and in the December following, delivered back the possession.

In January, 1858, Prouty sold and conveyed the premises to Harvey Woodruff, from whom, through several mesne conveyances, they finally passed to Israel Alden, who went into possession in April, 1859.

The debt, to secure which Benton executed the deed of trust to Garver, having fallen due and remaining unpaid, the latter exhibited his bill in chancery in the court below, in April, 1860, against Alden, the remote grantee of Prouty, asking that his trust deed be held to have the force and effect of a mortgage, upon all the right and equities of the said Almon Benton, at the date of the same, in and to the premises described therein; and that the demands described in the said trust deed, with the interest thereon, be the measure of the indebtedness secured thereby, and that the same be foreclosed as a common mortgage, and that so much of the premises, described in the bill of complaint, be decreed by the court to be sold as should be necessary to pay the same and the costs of that court.

Alden, in his answer, insisted that the only lien the complainant could have upon the premises would be the equity and right which there would be in the same after paying the amount due to Prouty, under his contract of sale to Benton, or to the grantee of Prouty, who would hold the lands subject to that contract; and he offered to permit Garver to fulfill said contract, crediting on the same all payments that had been made thereon.

The cause coming on for hearing, the circuit court found the amount due to Garver, under his mortgage, and decreed that the same be paid within a given time; and, in default thereof, that the master in chancery proceed to sell so much of the premises as should be necessary to satisfy the amount found due to the complainant, and to make conveyance, etc.

5

Thereupon, Alden took this appeal, and insists that, at most, Garver, by virtue of his mortgage from Benton, only succeeded to the rights of Benton under his contract of purchase from Prouty, which is the right to a conveyance of the premises from Prouty, or his grantee, upon a compliance with the terms of that contract.

Messrs. E. S. LELAND and B. C. COOK, for the appellant.

Mr. JAMES M. WIGHT, for the appellee.

Mr. CHIEF JUSTICE CATON delivered the opinion of the Court:

We cannot hesitate to reverse this decree. With deference, we say we can hardly appreciate the appearance of plausibility in the position assumed by the counsel for the complainant. The facts are these: Prouty agreed to sell to Benton the premises in question, on time. After this contract was made, and before any of the money was paid, Benton executed this mortgage, on the premises, to Garver, which was recorded. Afterwards Benton and Prouty rescinded their contract for the sale of the premises; and Benton, in form, conveyed them to Prouty, from whom, by several mesne conveyances, they passed to Alden, against whom Garver filed this bill to foreclose the mortgage. By his answer Alden offers to convey the land according to the terms of the original contract of sale from Prouty to Benton, which was in force at the time the mortgage was executed, upon receiving the purchase-money therein stipulated, but the court decreed a foreclosure of the mortgage as a first lien on the land, the same as if Benton had paid the full consideration for the land at the time he executed this mortgage. The argument by which this decree is sought to be maintained is this, if we understand it: The contract of sale from Prouty to Benton was the same in equity as if Prouty had conveyed the legal title to Benton, who, at the same time, had executed a mortgage back to Prouty for the purchase-money, which would be the first mortgage on the premises, and Garver's a second mortgage. And then, when Benton reconveyed the legal title to Prouty,

that first mortgage became merged in the legal title, and thus ceased to exist, leaving Garver's a first mortgage upon the estate. This, it seems to us, is asking a court of equity to consider that a good many things were done which never were done, and which were never intended to be done, and which were never required to be done, to execute the intentions of the parties; not for the purpose of doing equity between the parties, but for the purpose of perverting the intentions of the parties, and of doing gross inequity. It is the duty of a court of equity, certainly, no less than of courts of law, to look at the substantial facts, to ascertain the true intention of the parties, and to do substantial justice between them, and not to become the instrument of injustice. When intendments are made, it is for the purpose of effectuating the real intention of the parties and to do complete justice between them. Whatever interest Benton had in this land, at the time he executed this mortgage, was conveyed and incumbered by the mortgage, and no more. That was a right to purchase the land for the consideration stipulated in the contract of purchase. At most, Garver could acquire no more rights to, or interest in, this land by virtue of this mortgage than Benton, the mortgagor, had. Even if he had taken an absolute conveyance from Benton, instead of this mortgage, he would have acquired no more than a right to receive a conveyance upon payment of the purchase-money. Alden purchased from Prouty after this mortgage was recorded, and hence took it subject to the rights of the mortgagee, but only subject to those rights. The mortgage lien was upon the contract of purchase, and entitled him to foreclose the mortgage, and have that contract sold for the satisfaction of the mortgage. For this purpose the contract still subsisted, notwithstanding it had been destroyed as between the original parties to it. These were all the rights of Garver, and all that he could require to be done, and all that justice and good conscience can allow.

The decree is reversed and the suit remanded.

*Decree reversed.*