FANNY R. S. BALEN v. URSULE C. MERCIER ET AL.

*Recording laws—Contract of purchase—Mortgage of equitable interest—Lien for purchase money—Amendment of answer.*

1. The record of a mortgage executed by a contract purchaser of land, who has gone into possession under an agreement with the vendors, is *constructive* notice to a subsequent purchaser or incumbrancer of the *legal* title.

2. Our statutes contemplate that any instrument entitled to be recorded shall *first* be entered in the entry book, *when* it is deemed recorded.

3. The purchase money is the first lien on land held under a land contract, and a mortgage given as security for money advanced to pay such purchase price takes precedence of a prior recorded mortgage of said property.

4. In the exercise of a proper discretion, the court may permit a defendant on the trial to file an *unsworn* amended answer, setting up want of notice or knowledge of complainant's mortgage, an answer under oath being waived. and the amended pleading containing no admissions available to the complainant as evidence. Under such circumstances, the signature of the defendant was a mere formality, which could be dispensed with.

Appeal from Roscommon. (Aldrich, J.) Argued April 3, 1889. Decided June 7, 1889.

Bill to foreclose a mortgage. Complainant appeals. Decree against defendant Keith reversed, and modified as to

defendant Crisman, and one entered in the Supreme Court against both of said defendants in accordance with the opinion, in which the facts are stated.

*J. L. Stoddard*, for complainant.

*H. H. Woodruff*, for defendant Keith.

*J. L. Starkweather* (*A. B. Maynard* and *Dwight N. Lowell*, of counsel), for defendant Crisman.

CHAMPLIN, J. A bill of complaint was filed on January 20, 1887, to foreclose a mortgage given by defendant Ursule C. Mercier to complainant, dated May 10, 1882, and recorded in Roscommon county May 24, 1882, and in Cheboygan county May 25, 1882, to secure the payment of $3,000 on May 10, 1885, with interest at 10 per cent. per annum, payable semi-annually, and six interest notes for the accruing interest, said interest notes maturing at the times interest was payable for said loan.

The property covered by the mortgage is situated in the counties of Roscommon and Cheboygan, and is described therein and in the bill of complaint as follows, viz:

"Lots numbered nine (9) and ten (10) of block numbered thirty-five (35), in the village of Roscommon, in Higgins. township, according to the recorded plat thereof.

"Also, all her right, title, and interest in any and all contracts she may have with Waterman, Davidson & Co. to the north one-half ($\frac{1}{2}$) of the south-west quarter ($\frac{1}{4}$), and the north-west one-quarter ($\frac{1}{4}$) of the south-east one-quarter ($\frac{1}{4}$), of section four (4), in town twenty-four (24) north, of range one (1) west.

"Also, all her right, title, and interest she may have in any and all contracts to lots number one (1) and two (2) in block seventy-four (74), Mackinaw City; said contract recorded in Liber K of Deeds, on pages 267 and 268, in register's office of Cheboygan county, Michigan, on the thirty-first day of March, 1882."

The bill contains the usual allegations found in foreclosure bills, and it shows that this mortgage was recorded in the

office of the register of deeds for Roscommon county on May 24, 1882, in Liber 3 of Mortgages, on page 306, and in the office of the register of deeds for Cheboygan county on May 25, 1882, in Liber D of Mortgages, on pages 439–441.

It further alleges that, at the time of the execution and delivery of the notes and mortgage, Mrs. Mercier held a contract from Waterman, Davidson & Co. for the purchase from them of the north half of the south-west quarter, and north-west quarter of south-east quarter, of section 4, aforesaid, dated November 7, 1881, and recorded in the office of the register of deeds for Roscommon county on May 15, 1882, in Liber 1 of Miscellaneous Records, page 140; and that since the execution of the mortgage, and on the twenty-sixth day of December, 1885, Mrs. Mercier acquired the legal title to said lands; and the bill claims that all the right, title, and interest acquired by Mrs. Mercier in said lands after the execution and delivery of the mortgage inures to the benefit of complainant, and is subject to and covered by her said mortgage.

Defendant Keith answered, and set up that Mrs. Mercier made default under her contract, and neglected to pay either principal or interest, and such proceedings were had that she was divested of all right to the land, and requested him to step in and buy the land, which he did, and paid the purchase price to Waterman; that, before he would advance the money to buy, he insisted that Mrs. Mercier should give him a deed, which she did, dated November 13, 1885; that Waterman, by mistake, made the deed to her instead of to him; that he advanced $300 for principal and $18 for taxes.

We think the court exercised a proper discretion in allowing defendant Crisman to file amendments to his answer, setting up want of notice or knowledge of complainant's mortgage. Answers under oath were waived, and the amendment was in furtherance of justice.

It contained no admissions which could avail complainant

as evidence, and was not evidence in defendant's behalf, and, under the circumstances, the signature was a mere formality that could be dispensed with.

Had the bill called for answer under oath, the case would have been different, and an unsworn and unsigned amendment would not be permitted.

The defendant Crisman claims that, at the time Mrs. Mercier executed the mortgage to Mrs. Balen, she had no title to lots 1 and 2, block 74, Mackinaw City, but at the date thereof the title was in one Henry Conklin, in fee; that in August, 1882, she desired to loan of defendant Crisman $2,500, and to secure him upon said lots; that, for the purpose of ascertaining whether the security was good, he went to Mackinaw City to examine and ascertain the title to said lots; and that, upon arriving there, he ascertained that she had no title to said lots, but held a land contract from Henry Conklin for the purchase of the same, upon which $200 had been paid by her, leaving a balance still due of $530. Defendant informed her that she had no title to the lots, but, if Conklin's title was perfect, and he would convey to her his title, defendant would loan her said sum. They then, with Conklin, went to the register's office for the purpose of examining the title of Conklin to the lots, and found his title perfect. Defendant then, at Mrs. Mercier's request, paid the balance to Conklin, and he executed a warranty deed of said lots to Mrs. Mercier, and she thereupon executed a mortgage to him to secure the payment of $2,500, which was the sum loaned at that time, including the purchase money aforesaid. This was September 1, 1882.

The money was loaned to her for the express purpose of paying the balance due upon the contract, and getting title from Conklin, and for the purpose of paying for materials and labor contracted by said Mercier for the purpose of erecting a hotel on said lots; and such money was so used, and for no other purpose.

Afterwards, he loaned her an additional sum of $500, for which she gave her note and another mortgage on said lots; and later still, being some time in December, 1882, Mrs. Mercier desiring a still further loan in order to pay for material and workmen upon said hotel, and prevent liens for labor and material being laid thereon, he loaned her an additional sum of $2,100, and the two prior mortgages were discharged, and the whole loan was embraced in one sum of $5,100, and a mortgage was executed covering said lots for the whole amount.

Defendant claims that during all this time he had no actual notice or knowledge of complainant's mortgage.

After hearing proofs, the circuit court dismissed the bill of complaint as to Keith; and as to the property covered by the Crisman mortgage he decreed as follows:

" 1. That there is due to the complainant upon her note and mortgage mentioned and set forth in the bill of complaint herein, for principal and interest to this date, the sum of four thousand one hundred and thirty dollars and twenty cents ($4,130.20).

"2. That there is due to the defendant Frederick S. Crisman upon his note and mortgage set forth in his amended answer, filed herein, for principal and interest to this date, including the several sums of money paid by said defendant for insurance upon the property covered by his said mortgage, the sum of six thousand six hundred eighty-four dollars and eighty-nine cents ($6,684.89).

"3. That the complainant has a lien upon lots 1 and 2 in block 74, in Mackinaw City, in the county of Cheboygan and State of Michigan, being a portion of the property covered by her said mortgage, for the amount that had been paid by the defendant Ursule Celina Mercier upon the contract given to her by Henry Conklin for the sale thereof to her, dated on the first day of April, A. D. 1882, at the time of the execution of the defendant Crisman's mortgage (which was on the twenty-seventh day of December, A. D. 1882), which amount is two hundred dollars ($200.00), with interest thereon at the rate of 10 per cent. per annum, payable semi-annually from the date of the complainant's said mortgage, viz., May 10, A. D. 1882, which is prior, superior, and paramount to the

lien of the defendant Crisman thereon; and that the defendant Crisman has a lien thereon, subject to the lien of the complainant for the said sum of two hundred dollars ($200.00) and interest, as aforesaid, for the aforesaid sum of six thousand six hundred and eighty-four dollars and eighty-nine cents ($6,684.89), which is prior, superior, and paramount to the lien thereon for the amount due to the complainant as aforesaid, over and above the said sum of two hundred ($200.00) and interest, as aforesaid; and that the said complainant next has a lien thereon, subject to the said lien of defendant Crisman, for the amount due her as aforesaid, over and above said sum of two hundred dollars ($200.00) and interest, as aforesaid."

He decreed that the Roscommon property covered by the mortgage should be sold first, and gave other directions usual in decrees of foreclosure.

The interests of the two defendants who appeared and answered the bill of complaint will be considered separately.

*First.* As to the controversy between complainant and Crisman. The main question in issue is whether the record of a mortgage upon land of which the mortgagor has only a contract of purchase is notice to a subsequent purchaser or incumbrancer of the legal title, without actual notice of the mortgage.

The contract executed between Conklin and Mrs. Mercier conveyed to her an interest in lands. It was dated April 1, 1882. The consideration named in the contract was $700, $100 of which was paid down, and $100 was to be paid July 1, 1882; $100, October 1, 1882; $100, January 1, 1883; $100, April 1, 1883; $100, July 1, 1883; and $100, October 1, 1883.

It was mutually agreed that Mrs. Mercier should have possession of the premises from the date of the contract. The testimony shows that she went immediately into the possession, and commenced to erect a hotel thereon. She was then in possession, clothed with the equitable title. It was an interest in the land which she could sell, assign, or mortgage. By the mortgage executed to Mrs. Balen, Mrs. Mercier con-

veyed her interest in the land covered by the contract as
security for the money borrowed by her. The conveyance
was duly witnessed and acknowledged; and as a mortgage it
was entitled to be recorded in the book of mortgages, and to
be entered in the entry book kept by the register of deeds.
How. Stat. §§ 5674, 5675; *Sinclair v. Slawson,* 44 Mich. 126
(6 N. W. Rep. 207).

Our statutes contemplate that every instrument which is
entitled to be recorded shall first be entered by the register in
the entry book, and it is then deemed recorded. It shall
next be spread at length upon the record books provided for
that purpose. It shall lastly be indexed in the proper general
index by entering alphabetically the name of every party to
each instrument recorded by the register, with a reference to
the book and page where the same is recorded. How. Stat.
§§ 5674–5678, 5682.

The statutes contain no specific definition or direction as
to what instruments in writing shall be recorded, and what
shall not. How. Stat. § 5652, does, however, provide that—

"Conveyances of lands, or of any estate or interest therein,
may be made by deed, signed and sealed by the person from
whom the estate or interest is intended to pass, being of
lawful age, or by his lawful agent or attorney, and acknowl-
edged or proved and recorded as directed in this chapter,
without any other act or ceremony whatever."

Section 5658 requires deeds of lands, or any interest in
lands, to be executed in the presence of two witnesses, and
acknowledged before some prescribed officer.

The statutes then prescribe the duty of the register of
deeds. He is required to enter and record all deeds of con-
veyance absolute in their terms in one set of books, and in
another set all—

"Mortgages and other deeds intended as securities, and all
assignments of any such mortgages or securities."

I think it is beyond doubt that, under these provisions of

our statutes, the mortgage of Mrs. Balen was entitled to be recorded. It was an instrument authorized by law to be recorded, and was properly recorded, and was notice to subsequent purchasers and incumbrancers of the mortgage and its contents. *Wing v. McDowell,* Walk. Ch. 182; *Cooper v. Bigly,* 13 Mich. 475, 476; *Parkist v. Alexander,* 1 Johns. Ch. 394; *Johnson v. Stagg,* 2 Johns. 510; *Hunt v. Johnson,* 19 N. Y. 279; *Stoddard v. Whiting,* 46 Id. 627; *U. S. Insurance Co. v. Shriver,* 3 Md. Ch. 381; *Bellas v. M'Carty,* 10 Watts, 13; *Neligh v. Michenor,* 11 N. J. Eq. 539; *Wilder v. Brooks,* 10 Minn. 50.

How. Stat. § 5683, provides that every conveyance of real estate within this State, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded.

The statutes of other states contain like provisions; and the courts of other states and of this State construing such statutes have declared that conveyances, duly recorded, operate as constructive notices to subsequent purchasers and incumbrancers of the instrument and of its contents. It is true that several of the courts tack upon this construction a limitation that the record is notice only to those claiming under the same grantor, or one who is the common source of title. The reasoning proceeds in some cases upon the theory that the statute only provides for recording conveyances of legal estates in lands, and partly upon the theory that the registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed; and, when one link in the chain of title is wanting, there is no clue to guide the purchaser in his search to the next succeeding link by which the claim is continued; and, consequently, when a purchaser has traced the title down to an individual

out of whom the record does not carry it, the registry act makes that title the purchaser's protection.

The first theory stated has no application under our statutes, so far as mortgages are concerned. This is apparent from what has been above said.

Nor does the second theory apply to a mortgage or other conveyance by one in possession of the premises under a contract of purchase, for such possession is constructive notice of the rights under which the party holds. *Farwell v. Johnston*, 34 Mich. 342.

A party purchasing from the person in whom the legal title appeared to be of record could not hold the premises as against the contract purchaser in possession; and, when such purchaser is found in possession, then the party dealing with the owner of the legal title is bound to know that the contract purchaser has an interest in the land, which he may mortgage; and, if he has mortgaged it, and the mortgage is duly recorded, there is no reason why he should not be charged with constructive notice. *Alden v. Garver*, 32 Ill. 32; *Crane v. Turner*, 7 Hun. 357.

In such case the reason asserted in favor of a person relying upon the record of the legal title does not apply. He is bound to search for equitable titles and interests, because he is apprised that equitable interests have been created by the contract of sale and possession under it. There is no difficulty in ascertaining the name of the contract purchaser who is in possession. There is, therefore, no difficulty in his pursuing his search of the records through the index of the names of parties who have mortgaged. He has the same facility to trace the chain of incumbrances as to equitable mortgages that he has for legal incumbrances, and with as great accuracy.

In this case, Crisman not only knew that Mrs. Mercier was in possession, but he had actual knowledge of the contract of

purchase; and it was as much his duty to look for incumbrances in the index under the letter "M" as it was under "C."

The purpose of providing an index is to facilitate search. This is apparent from the act of April 13, 1841, which provided for such index—

"In order that the records containing the title of lands may the more easily be preserved, and a search of said records to ascertain such title facilitated."

I had occasion to discuss this question in the case of *Edwards v. McKernan*, 55 Mich. 520 (22 N. W. Rep. 20), and to express my views upon the case of *Farmers' Loan & Trust Co. v. Maltby*, 8 Paige, 361, and of *Wing v. McDowell*, Walk. Ch. 175, and I have seen no reason since to cause me to change the opinion then advanced; and I shall not review the authorities at length upon the propositions. It cannot be logically denied that the mortgage in question is notice to Crisman under the recording laws without denying that such mortgage was entitled to be recorded.

It does not affect the question under consideration that the contract between Conklin and Mrs. Mercier was not acknowledged and recorded. It was duly witnessed; and, had it been acknowledged and recorded, such record would have had the effect as notice provided for in How. Stat. § 5712. But the statute (section 5713) provides that—

"No contract for the sale of lands shall be deemed invalid for want of ackowledgment or recording."

There is no question as to the existence of the contract, or that Crisman had actual notice of its terms; and I have already said that he is held to have had notice of Mrs. Balen's mortgage.

Argument is made that, under the peculiar language of the mortgage relating to these contracts, it covered merely a

chattel interest, and not an interest in real estate. I am of opinion that it conveyed to Mrs. Balen all the interest which Mrs. Mercier had under the land contracts, and no other. She stands in Mrs. Mercier's place. She had a right to pay the purchase money in order to prevent a forfeiture. She had the right to foreclose her mortgage security; and, upon a sale, the purchaser would take the interest of Mrs. Mercier, with a right to perform the contract and receive the deed.

But the purchase money is the first lien upon the premises; and, under the facts in this case, defendant Crisman, having advanced such unpaid purchase money, is entitled to a first lien upon the premises to the amount of such purchase money advanced, with interest at 8 per cent. until it matured, according to the contract, and interest at the legal rate thereafter. The balance of his mortgage is a second lien to that of complainant for the amount of her mortgage, which is subject to the purchase money and interest; and the sale under the decree will be made subject thereto.

The order of sale must be so marshaled as to sell the lands in Roscommon county first, and the lands covered by the Crisman mortgage last.

The defandant Keith purchased with actual notice of Mrs. Balen's mortgage. Under the testimony, his purchase operated as an assignment of the contract of purchase from Waterman; and the pretended forfeiture must be regarded as ineffectual. He is entitled to stand in the shoes of his grantor, Mr. Waterman, and to a first lien for the purchase money and interest according to the contract. The premises covered by his deed will be sold next after, the land in Roscommon county, and will be made subject to his lien for the purchase money and interest.

The decree against defendant Keith must be reversed, with costs of both courts.

The decree against defendant Crisman must be modified,

and a decree entered here in accordance with this opinion against both defendants.

The complainant will recover costs of both courts against Crisman.

MORSE, CAMPBELL, and LONG, JJ., concurred.

SHERWOOD, C. J.   I concur in the result.