GRAY *v.* H. M. LOUD & SONS LUMBER CO.

1. MORTGAGES — FORECLOSURE — SEPARATE PARCELS — ORDER OF SALE.

> Where mortgaged premises are sold in separate parcels successively to different persons, without reference in the deeds to such mortgage, the parcels, in case of foreclosure, should be sold in the inverse order of alienation.

2. SAME—RECORDING LAWS—BONA FIDE PURCHASER.

> Such rule, however, cannot be invoked in favor of a purchaser of one parcel, whether by contract or deed, who has failed to record the conveyance under which he claims, as against a subsequent purchaser in good faith of another parcel by conveyance duly recorded; but, on the contrary, such subsequent purchaser can insist that the former parcel be first sold to satisfy the mortgage debt.

3. SAME—PROVISION FOR PARTIAL RELEASE.

> A provision in a mortgage covering several lots, that it shall be released as to any lot on payment of a stated sum, will not enable a subsequent purchaser of one of the lots, who has not sought to avail himself of such provision, to attack a sale of the lot on foreclosure on the ground that it was subjected to the payment of more than the amount stated.

4. SAME—USURY.

> A purchaser of mortgaged premises cannot object to the mortgage on the ground that usurious interest was exacted from his grantor, since the defense of usury is a personal one.

Appeal from Wayne; Carpenter, J. Submitted June 5, 1901. Decided October 8, 1901.

Bill by Emma R. Gray against the H. M. Loud & Sons Lumber Company, impleaded with Anthony Muer, to set aside a foreclosure sale. From the decree rendered, both parties appeal. Reversed and bill dismissed.

*Bacon & Yerkes*, for complainant.

*William H. McBryan*, for defendant.

Moore, J. On the 22d day of October, 1887, complainant purchased from Hibbard Baker, by land contract, lot No. 162 of the Waterworks subdivision of private claim 257, in the township of Hamtramck, county of Wayne, for a consideration of $500. Fifty dollars of the purchase price was paid at the date of the contract, $50 and interest November 25, 1887, $300 and interest during the year 1888, $50 February 1, 1890, and the final payment of $50 and interest April 1, 1890. Complainant did not record her contract. The lot was a vacant, unimproved one. Complainant received a warranty deed of the lot from Hibbard Baker and wife, in pursuance of said contract, on the 22d day of September, 1890, and two days later recorded it.

On May 3, 1887, Hibbard Baker and Howard G. Meredith executed to the State Savings Bank a mortgage on 45 lots of the Waterworks subdivision for a consideration of $5,000, which mortgage contained the following clause: "With the privilege of having any lot released at any time on payment of $300 and accrued interest, with three months' extra interest." This mortgage included lots 162, 251, 252, and 253. Releases were executed by the State Savings Bank at various times, releasing all the lots from this mortgage, except the four lots mentioned.

On the 28th day of February, 1889, Hibbard Baker and Howard G. Meredith executed to Caroline E. Richards a warranty deed for lots 251, 252, and 253. On the 18th of March, 1889, Caroline E. Richards deeded said lots to Gustave E. Mann, and on January 31, 1890, he deeded them to the H. M. Loud & Sons Lumber Company, which deed was recorded on the 15th of March, 1892.

On the 12th day of April, 1895, after all the lots subject to the mortgage had been discharged therefrom except lots 162, 251, 252, and 253, the State Savings Bank assigned the mortgage to the H. M. Loud & Sons Lumber Company for $472.42. Immediately on obtaining the assignment of this mortgage, the H. M. Loud & Sons Lumber Company commenced foreclosure proceedings against

all of these lots, and on the 12th day of August, 1895, lot 162 was bid off to the H. M. Loud & Sons Lumber Company for $520.49, being the entire amount claimed to be due on said mortgage, together with the costs and expenses of foreclosure and sale.   On the 13th of October, 1899, the H. M. Loud & Sons Lumber Company sold and deeded lot 162 to Anthony Muer for the sum of $750.   The defendant the H. M. Loud & Sons Lumber Company had no knowledge of the existence of this mortgage to the State Savings Bank until some time after it purchased, in 1892.   The complainant had no knowledge of the existence of this mortgage until the 3d day of February, 1896, and she paid all the taxes on this property from the time she purchased it until November, 1895.

November 24, 1899, complainant filed this bill, asking: (1) That the purchase of the mortgage by the Louds from the bank be decreed to be a full payment and satisfaction thereof as against Gray; (2) that the foreclosure and sale of lot 162 by the Louds may be declared null and void against Gray, and that the Louds may be decreed to release to Gray all their title and interest in and to lot 162 under and by virtue of the mortgage and foreclosure thereof; (3) for general relief.   The court made a decree that neither party was entitled to have the other's land sold prior to its own, but that the balance due on the mortgage, and expenses, amounting to $520.49, should be paid ratably by each of the four lots.   The court also held that, as the defendant had sold lot 162 to a *bona fide* purchaser for $750, that amount was a fair valuation of the lot, and that the defendant should account to the complainant for that sum, less $130.12; and a decree was entered requiring the defendant to pay to the complainant the sum of $619.88, that being the difference between the amount for which the lot was sold and one-quarter of the mortgage and expenses.   Both parties appealed from this decree, though complainant does not object to having it affirmed.

It is the claim of the complainant that, having pur-

chased, and substantially paid for, her lot before the other lots were sold to defendant's grantors, although her conveyance was recorded subsequent to the record of the first conveyance of the other lots, she was entitled to have those lots sold first for the satisfaction of the mortgage; citing *Cooper* v. *Bigly*, 13 Mich. 463; *James* v. *Hubbard*, 1 Paige, 228; *Ellison* v. *Pecare*, 29 Barb. 333; *Libby* v. *Tufts*, 121 N. Y. 172 (24 N. E. 12). In *Libby* v. *Tufts*, though the second purchaser put his conveyance on record first, the first purchaser had fully completed his contract, and entered into possession of the premises. A reference to the other cases will show they, too, are not controlling in this one.

Complainant insists that, even though she may not insist upon the lots being sold in the inverse order of alienation, the decision of the circuit judge is undoubtedly in accordance with the law applicable to all cases where it would be inequitable to apply the general rule, and is as favorable to the defendant as the circumstances warrant; citing *Cooper* v. *Bigly*, 13 Mich. 463; *Bernhardt* v. *Lymburner*, 85 N. Y. 172; *Woods* v. *Spalding*, 45 Barb. 602; *Hill's Adm'rs* v. *McCarter*, 27 N. J. Eq. 41. In *Hill's Adm'rs* v. *McCarter* the first purchaser took his deed subject to the mortgage, and the court very properly held his land was not wholly relieved from the lien. An inspection of the other cases cited will show they are not decisive of this case in favor of complainant.

If Miss Gray's contract had been put upon record, or if she had gone into possession of her lot, and her possession had been so obvious that it would have been notice to subsequent purchasers, her contention that the lots purchased by the defendant must first be sold would be sustained by the great weight of authority. As she did not put her contract upon record, and her lot was a vacant, unoccupied lot, can the decree of the circuit judge be sustained? When Miss Gray obtained her land contract, and made payments thereon, she obtained an interest in the land de-

scribed therein. *Balen* v. *Mercier*, 75 Mich. 47 (42 N. W. 666). Section 8988, 3 Comp. Laws, reads:

" Every conveyance of real estate within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded."

Sections 9035–9038, 3 Comp. Laws, provide for the recording of land contracts.

The object of the recording laws is to protect subsequent *bona fide* purchasers (*Godfroy* v. *Disbrow*, Walk. Ch. 260), and to prevent fraud by securing certainty and publicity in such dealings (*Atwood* v. *Bearss*, 47 Mich. 72 [10 N. W. 112]). In *Burns* v. *Berry*, 42 Mich., at page 179 (3 N. W. 924), in commenting on the policy of the recording acts, the court says:

" The protection which this statute gives to a *bona fide* purchaser does not proceed upon the theory, and is not made to depend upon the fact, that the grantor, at the time of such conveyance, had any interest in the premises whatever, or that any passed from him by his conveyance to such subsequent purchaser. It is not by force of the conveyance, but by the terms of the statute, that such subsequent purchaser acquires title to the premises. His grantor, having previously conveyed, has no title left to convey, and could therefore by his deed, unaided by the statute, pass none to any third person. Our registry laws, however, step in, and, for the purpose of protecting an innocent purchaser, give him what he supposed, and from an examination of the records had a right to suppose, he was acquiring by his purchase, and to this extent cut off the previous purchaser who negligently failed to record his conveyance."

*Cooper* v. *Bigly*, 13 Mich. 463, throws much light upon the question involved in this case. Justice CAMPBELL, speaking for the court, said:

" It has always been understood to be the settled law of this State that, where mortgaged premises are conveyed or incumbered in parcels, they are, upon a foreclosure, to be

sold in the inverse order of such conveyances or incumbrances, unless the mortgagee will be prejudiced by having the property sold in parcels,—a thing which can never happen where the property, when mortgaged to him, was treated as separate. This doctrine was recognized in *Mason* v. *Payne*, Walk. Ch. 459, and *Caruthers* v. *Hall*, 10 Mich. 40, in both of which cases the principal exception to the rule was referred to and enforced. The same principle was recognized and explained in *James* v. *Brown*, 11 Mich. 25. It rests chiefly, perhaps, upon the grounds that, where one who is bound to pay a mortgage confers upon others rights in any portion of the property, retaining other portions himself, it is unjust that they should be deprived of their rights so long as he has property covered by the mortgage out of which the debt can be made. In other words, his debts should be paid out of his own estate, instead of being charged on the estates of his grantees. Any other rule would be, in effect, to enable him to enjoy for his own benefit that which he has once vested in another, and, in a measure, to recall his own grant. The rule cannot, therefore, depend upon the existence or non-existence of covenants of warranty. It depends simply on the fact whether he has or has not seen fit, in making a disposition of a part of his incumbered premises, to charge it primarily with the payment of the incumbrance. Whenever he so charges any part, the purchaser takes it subject to the burden, and the relative date of his purchase is immaterial. See cases cited above; *Welch* v. *Beers*, 8 Allen, 151; *Kilborn* v. *Robbins*, Id. 466. It has, indeed, in several cases cited at the bar, been held that the covenant of warranty was very important in determining the intent of the mortgagor not to charge the mortgage on the property sold. But there is no satisfactory authority holding that, in the absence of such a warranty, no such intent could be presumed. On the contrary, wherever the doctrine of priority is respected at all, it has been enforced unless an opposite intent was made out. And such appears to us the common-sense inference; for a man owing a debt, for which his own property remains liable, must naturally be supposed to expect to have it paid out of his own means, unless he has bargained to the contrary. And this equity, having arisen in favor of the first purchaser, must remain in his favor against any subsequent equities of other parties derived from his grantor.

"There are some States in which all parcels of mort-

gaged land are held liable ratably. See cases collected in notes to Story, Eq. Jur. §§ 633, 635, 1233*a*. And it has been suggested by Judge Story, and was claimed on the argument, that a purchaser of one lot cannot be expected to search the record for the title of other lots, and therefore should not be subjected to equities attaching to them. But this reasoning entirely passes over the well-settled rule that, where a person is obliged to take notice of a deed, he is bound by notice of all that it contains which can affect him. Having notice of a mortgage covering other lots besides his own, he is bound to ascertain whether those lots have been sold previously in such a way as to throw any peculiar burden on the one he is purchasing, just as much as whether that lot has been directly, instead of indirectly, conveyed or charged, prior to his purchase, by his grantor or his predecessors in the title. The registry laws furnish the means for one investigation as easily as for the other. And the construction put upon these laws is in accordance with this view. *Chapman* v. *West*, 17 N. Y. 125; *Chase* v. *Woodbury*, 6 Cush. 143; *Brown* v. *Simons*, 44 N. H. 475. This latter case is a well-considered case, and collects the authorities quite fully upon the whole subject, so that it will not be desirable to multiply the citations.''

*Brown* v. *Simons* is an instructive case, not only because it is quoted with approval by Justice CAMPBELL, but also because it comments upon and disapproves *Ellison* v. *Pecare*, which is relied upon by the complainant. We quote:

'' If, however, at the time of the subsequent conveyance by the mortgagor, the grantee has no notice of the prior conveyance, in fact or constructively (the same not having been registered), such subsequent grantee ought not to take the land so granted subject primarily to the whole debt. On the contrary, as the prior grantee has failed to record his deed, and thus give notice of the true state of the title, the subsequent grantee, unless otherwise notified, may rightfully regard the land which is thus apparently in the hands of the mortgagor as primarily liable for the whole debt. It is true that the first grant by the mortgagor of a part of the property does not in terms impose a lien upon what is left, but in effect it creates upon it, as between the parties, a new incumbrance, and makes it liable pri-

marily for the whole debt, as much as if such mortgagor had mortgaged it to such purchaser to indemnify him against the original mortgage. It makes a case, then, that clearly comes within the spirit of our statute of enrollments, which is designed for the security of subsequent purchasers and creditors, to give notice of all conveyances of any estate in lands, whether legal or equitable. 1 Story, Eq. Jur. § 403; *Parkist* v. *Alexander*, 1 Johns. Ch. 398; 4 Greenl. Cruise, 448, 452, and notes; *General Ins. Co.* v. *United States Ins. Co.*, 10 Md. 517 (69 Am. Dec. 174); *Brush* v. *Ware*, 15 Pet. 113. The Middlesex register act, which requires to be enrolled 'all deeds and conveyances,' was held to extend to every species of deed or instrument by which lands may be conveyed or affected; and therefore an appointment under a power is considered as a conveyance within the register acts. 4 Greenl. Cruise, 448; *Scrafton* v. *Quincey*, 2 Ves. Sr. 413. In that case it was contended that this deed was not a separate conveyance, but only the execution of a power under a deed that was registered; but the court held that, if this construction was to prevail, there would be an end of the registry law, for by this means a secret deed might be set up to defeat him who had registered before; and the court say the case is clearly within the mischief recited, which is to prevent a party from being defeated by a secret or pocket deed.

"In *Brush* v. *Ware*, before cited, the court, in discussing the general doctrine of notice, lays it down that 'no principle is better established than that a purchaser must look to every part of the title which is essential to its validity.' And again, it is laid down in the same case that 'the law requires reasonable diligence in a purchaser to ascertain any defect of title; but, when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny.' In accordance with such views it was held in *Reeder* v. *Barr*, 4 Ohio, 458 (22 Am. Dec. 762), that where a patent was issued to Newell, the assignee of Henson Reeder's administrator, a subsequent purchaser was charged with notice of the equitable rights of the heirs of Reeder, because by the laws of Ohio an administrator has no power, unless authorized by the court of common pleas, to convey an interest in land. So, in *Brush* v. *Ware* it was held that, as the executor had no power of sale unless given him by the will, the purchaser was bound to look into the will and see if such

power was given. See, also, *Backman* v. *Charlestown*, 42 N. H. 134.

"If the first conveyance by the mortgagor, after the mortgage, is duly registered by the grantee, he has done all that he can do to give notice of the new burden that is thereby thrown upon the part which is retained by the mortgagor, and a second purchaser, charged, as he clearly is, with notice of the mortgage upon the whole land, and, when the deed is registered, knowing that the extent of the burden upon his own purchase must depend upon the fact of there having been a prior conveyance by the mortgagor, would, upon due inquiry, and in the exercise of reasonable diligence, be led by the record to a knowledge of the true state of the title, and the extent of the incumbrance upon the land conveyed to him. This he is directly interested to know, and the first purchaser has placed the means of knowledge reasonably within his reach, and it is his own fault if he neglects to avail himself of it. In the examination of the title to the part he proposes to buy he is led directly to the original mortgage, and he finds that his is but part of an entire tract in which his grantor has only a right of redemption, and which was originally subject to a common burden, but liable to be affected by a prior sale of another part of the entire tract. Under such circumstances the different parcels of the tract mortgaged cannot, we think, be regarded as separate and distinct, so as to relieve him of the duty to inquire into the title to the other part; but we think that, in examining the title to the part he proposes to buy, he is led directly to a deed that puts him on inquiry as to the remaining part of the land. 2 Fonbl. Eq. book 3, chap. 3, § 1, note; 4 Greenl. Cruise, 452, note; *Parkist* v. *Alexander*, 1 Johns. Ch. 398. In accordance with these views is the doctrine of *Chase* v. *Woodbury*, 6 Cush. 143, where a mortgagor conveyed the whole of the mortgaged property to S. and R., to each an undivided half, and S., having recorded his deed, conveyed his half to C. before the deed to R. was registered; and, upon the payment by the representative of R. of the whole mortgage debt, it was held that he could not require contribution of C., because C. had purchased without any notice of the sale to R., and might, therefore, rely upon the other half being first held for the whole debt, although, had the deed to R. been recorded, it would have been notice of a lien on the land sold to S. equally with the other; but the failure to record it was a failure of one

claiming an incumbrance, namely, a lien on the estate for a contribution for one-half the money he might pay to redeem it, and this, the court held, stood upon the same footing as if R. had a mortgage from the first grantor, which he had failed to record. The result of this case is that a party purchasing a part of an estate under mortgage would be charged with notice of a registered conveyance of another part, when the effect would be to render his part so purchased liable to contribution equally with the other; and for the same reason he would be charged with such notice in a case where the effect would be to make his purchase primarily liable for the whole debt. The case of *Chase* v. *Woodbury* is directly in point, and fully sustains the views we have expressed.

"It is true it has been suggested that this right to have first applied the lands remaining in the mortgagor's hands, and those last sold, is a mere equity, and not a lien or incumbrance that comes within the provisions of the register laws, and so it is directly held in *Ellison* v. *Pecare*, 29 Barb. 333; and therefore it was decided that the deed first delivered would take precedence over a subsequent deed of another parcel, although the latter was first recorded. In this case, however, it appeared that neither of these purchasers had knowledge of the original mortgage at the time of their purchase, and the court expressly decline to give an opinion as to the result had the second purchaser known of the existence of the mortgage, and had he examined the records, and, finding no previous conveyance, been induced to buy, supposing in good faith that he was the first purchaser; in which case it is said there would be some show of equity in favor of the second purchaser. In the case of *La Farge Fire Ins. Co.* v. *Bell*, 22 Barb. 54, it was held, upon much consideration, that the register act; which provides that 'every conveyance not recorded shall be void against a subsequent purchaser in good faith of the same real estate, or any portion thereof, whose conveyance shall first be duly recorded,' does apply to the equitable right which is acquired by a purchaser of a parcel of the mortgaged property to have the residue first applied to the payment of the mortgage debt, and that such equitable right will not be defeated by a prior conveyance of that residue, unless it be by deed duly recorded, or other notice at the time of his purchase; and the reasons assigned for this doctrine are in no degree shaken by the subsequent case of *Ellison* v. *Pecare*,

which appears to have been decided without an examination of the case of *La Farge Fire Ins. Co.* v. *Bell.* Indeed, it is difficult to see how any other result can be reached.  The deed of a parcel of the tract mortgaged carries with it a well-established right to require the mortgagee first to exhaust the residue in the hands of the mortgagor before applying the parcel so conveyed; and, whether this right can be enforced only in equity or not, it is clearly a substantial interest in such residue, and one which it is the policy of the registry laws to protect.  See *Montgomery.* v. *Dorion,* 6 N. H. 255; *French* v. *Gray,* 2 Conn. 108; 4 Kent, Comm. 456; *Brown* v. *Manter,* 22 N. H. 468."

See 2 Jones, Mortg. (4th Ed.) § 1620.

When the defendant's grantor purchased the three lots, the record did not disclose a sale to Miss Gray, and he had a right to assume that the mortgagee would resort to the land still standing in the name of Mr. Baker before selling the land purchased by him.

Counsel say:

"The mortgage contained the following provision: 'With the privilege of having any lot released at any time on payment of $300 and accrued interest, with three months' extra interest.' Under this clause complainant was entitled to have her lot released at any time from the mortgage on payment of $300, and her lot should not be made liable to more than that amount on foreclosure of the mortgage, and any excess over that amount would have to be borne by the other lots, in any view of the case,"—citing *Clark* v. *Fontain,* 135 Mass. 464.

It is doubtless true that complainant might have had her lot released from the mortgage by paying to the mortgagee $300, but she never sought to do so.  She waited nearly four years after the mortgage foreclosure before filing this bill, and it is not a part of the theory of the bill.

It is claimed there was paid to the bank about $70 extra interest, which was usury, and which should have been applied as a general payment on the mortgage debt.  It has been repeatedly held that the defense of usury is a personal one, and may be waived.  *Sellers* v. *Botsford,* 11 Mich. 59; *Gardner* v. *Matteson,* 38 Mich. 200.

The case is an unfortunate one for the complainant, but it is made so by her failure to put her contract upon record.

The decree is reversed, and the bill of complaint dismissed, with costs.

The other Justices concurred.