CENTRAL CEILING & PARTITION, INC v DEPARTMENT OF
COMMERCE

Docket No. 225378. Submitted November 5, 2001, at Detroit. Decided January 29, 2002, at 9:15 A.M. Leave to appeal sought.

Central Ceiling & Partition, Inc., brought an action in the Wayne Circuit Court against the Department of Commerce, Primeau Homes, Inc., Kitchen Suppliers, Inc., and others, seeking from the Department of Commerce a recovery from the Homeowner Construction Lien Recovery Fund under the Construction Lien Act, MCL 570.1101 *et seq.*, for labor or materials furnished by Central Ceiling as a subcontractor in home improvement projects in which Primeau Homes was the general contractor. The same recovery was sought from the Department of Commerce by Kitchen Suppliers in a cross-claim against the department, and by Cappy Heating and Air Conditioning, Inc., which was allowed to intervene as a plaintiff. The construction liens on which Central Ceiling, Kitchen Suppliers, and Cappy based their claims had all been filed with and accepted by the Wayne County Register of Deeds office within ninety days of when the subcontractors last furnished labor or materials for the home improvement projects. The construction liens, however, were not recorded by the register of deeds office within ninety days of when the subcontractors last furnished labor or materials. The parties submitted the subcontractors' claims for decision by the court on stipulated facts. The department moved for summary disposition of the subcontractors' claims, arguing that, under the Construction Lien Act, a construction lien ceases to exist when it is not recorded within ninety days after the lien claimant last furnishes labor or materials. The court, Paul S. Teranes, J., denied the department's motion and ultimately entered judgments in favor of the subcontractors and against the department. The department appealed.

The Court of Appeals *held*:

The Construction Lien Act, in subsection 111(1), MCL 570.1111(1), provides that the right of a contractor, subcontractor, laborer, or supplier to a construction lien created by the act shall cease to exist unless, within ninety days after the lien claimant's last furnishing of labor or material for the improvement, pursuant

to the lien claimant's contract, a claim of lien is recorded in the office of the register of deeds for each county where the real property to which the improvement was made is located. However, the Construction Lien Act, in subsection 302(1), MCL 570.1302(1), provides that substantial compliance with the provisions of the act shall be sufficient for the validity of the construction liens provided for in the act and to give jurisdiction to the court to enforce them. Pursuant to the substantial compliance provision of the act, the subcontractors' actions of properly filing the liens with the register of deeds office and the register of deeds office's acceptance of the liens for filing constitute substantial compliance with the requirement of the act that a lien be recorded within ninety days. Accordingly, the subcontractors' rights were not subject to the automatic extinguishment provision of subsection 111(1) and did not cease to exist.

Affirmed.

WILDER, J., dissenting, stated that the substantial compliance provision of the Construction Lien Act does not apply to the statutorily mandated ninety-day recording deadline and that the term "recorded," as used in the act, means entry in the register of deeds' book of levies. Because the liens at issue in this case were not recorded within the ninety-day deadline, they ceased to exist and therefore provide no basis for recovery by the subcontractors from the Department of Commerce under the Homeowner Construction Lien Recovery Fund. The judgment of the trial court should be reversed and the matter should be remanded for the entry of an order of summary disposition in favor of the department.

LIENS — CONSTRUCTION LIENS — RECORDING — SUBSTANTIAL COMPLIANCE.

The filing of a construction lien and its acceptance by the register of deeds office within ninety days after the lienholder last furnishes labor or materials for the improvement of real property constitute compliance with the requirement of the Construction Lien Act that such a lien be recorded within ninety days after labor or materials were last furnished (MCL 570.1111[1], 570.1302[1]).

*Edwards & Martinuzzi, PLC* (by *Randy G. Martinuzzi*), for Central Ceiling & Partition, Inc.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Michael A. Lockman* and *Kelley T. McLean,* Assistant Attorneys General, for the Department of Commerce.

*Muller, Muller, Richmond, Harms, Myers & Sgroi* (by *Roy C. Sgroi*), for Kitchen Suppliers, Inc.

Before: NEFF, P.J., and WILDER and COOPER, JJ.

NEFF, P.J. Defendant Michigan Department of Commerce appeals as of right the trial court's denial of defendant's motion for summary disposition and entry of judgment of $21,280 in favor of plaintiff Central Ceiling & Partition, Inc. (Central), $4,054 in favor of defendant Kitchen Suppliers, Inc. (KSI), and $6,915 in favor of intervening plaintiff Cappy Heating and Air Conditioning, Inc. (Cappy) with respect to their claims against the Homeowner Construction Lien Recovery Fund. We affirm.

I

The facts in this case were stipulated before the trial court. Defendant general contractor Primeau Homes, Inc., failed to pay its subcontractors,[1] Central, KSI, and Cappy, for materials and work performed on several homes under Primeau's contracts with the owners for home improvements. The subcontractors sought recovery from the Homeowner Construction Lien Recovery Fund under the Construction Lien Act, MCL 570.1101 *et seq*. Pursuant to MCL 570.1111(1), Central, KSI, and Cappy each presented liens to the Wayne County Register of Deeds for recording within ninety days of the last furnishing of labor or materials for the improvements. However, Wayne County failed to formally "record" the liens by assigning them a

---

[1] For ease of reference, we refer to Central, KSI, and Cappy as "subcontractors," disregarding any technical distinction between material suppliers and service contractors.

liber and page number until sometime later, after the ninety-day period had passed.

Defendant sought summary disposition of the subcontractors' lien fund claims under MCR 2.116(C)(10) on the ground that the liens were not recorded within the ninety-day period as required by the Construction Lien Act, MCL 570.1111(1). The trial court denied defendant's motion and instead granted judgment in favor of the subcontractors, concluding that there was substantial compliance with the act's requirements and the subcontractors were entitled to recovery from the lien fund. The court reasoned that the subcontractors presented their liens for recording within the required ninety-day period and obtained date stamps on the filings, any delay by Wayne County staff in entering the filings in the record books was beyond the subcontractors' control, and, thus, there was compliance with the ninety-day requirement.

II

This Court reviews de novo as a question of law a trial court's grant of a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual basis underlying a claim. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). We consider all relevant documentary evidence in a light most favorable to the nonmoving party. *Id.*; *Ardt, supra*. Summary disposition under MCR 2.116(C)(10) is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

III

To recover under the Construction Lien Act, a claimant must record the lien within ninety days of the last date of furnishing material or labor:

Notwithstanding section 109 [MCL 570.1109], the right of a contractor, subcontractor, laborer, or supplier to a construction lien created by this act shall cease to exist unless, within 90 days after the lien claimant's last furnishing of labor or material for the improvement, pursuant to the lien claimant's contract, a claim of lien is recorded in the office of the register of deeds for each county where the real property to which the improvement was made is located. A claim of lien shall be valid only as to the real property described in the claim of lien and located within the county where the claim of lien has been recorded. [MCL 570.1111(1).]

Defendant contends that the lien claims filed by Central, KSI, and Cappy were not timely because even though they were filed by the subcontractors and accepted by the Wayne County Register of Deeds office within the ninety-day period, the register of deeds office did not formally record the liens until after the ninety-day period had passed. We disagree.

The Construction Lien Act contains a substantial compliance provision, MCL 570.1302(1):

This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

The substantial compliance provision does not necessarily apply to all requirements of the act. *Northern*

*Concrete Pipe, Inc v Sinacola Cos—Midwest Inc*, 461 Mich 316, 321; 603 NW2d 257 (1999). The scope of the provision must be determined case by case by analysis of logically relevant factors, such as

> the overall purpose of the statute; potential for prejudice or unfairness when the apparent clarity of a statutory provision is replaced by the uncertainty of a "substantial compliance" clause; the interests of future litigants and the public; the extent to which a court can reasonably determine what constitutes "substantial compliance" within a particular context; and, of course, the specific language of the "substantial compliance" and other provisions of the statute. [*Id.* at 321-322.]

In applying these factors, the Court in *Northern Concrete Pipe* observed that provisions outlining the requirements for filing certain information with public officials or those providing for notice are the types of provisions to which a substantial compliance provision may suitably be applied. *Id.* at 323. We agree, and so conclude, on the facts before us.

Pursuant to the Construction Lien Act's substantial compliance provision, MCL 570.1302(1), the subcontractors' actions of properly filing the lien claims with the register of deeds, and acceptance by the register of deeds office, constitutes substantial compliance with the act's requirement that a claim of lien be recorded within ninety days. Accordingly, the subcontractors' rights were not subject to the automatic extinguishment provision of § 111 and did not cease to exist.

Of the six liens at issue, all were timely filed and accepted. Central's liens were subject to a last date of furnishing of October 3, 1997, and were filed with the

register of deeds on December 17, 1997. KSI's lien was subject to a last date of furnishing of June 11, 1997, and was filed with the register of deeds on August 27, 1997. Cappy's liens were subject to a last date of furnishing of September 18, 1997, and were filed with the register of deeds on December 5, 1997.

Unfortunately, the claims of lien were not formally recorded within the register of deeds office for more than thirty days after they were filed and accepted. Central's claims of lien were filed and accepted on December 17, 1997, but not formally recorded until February 2, 1998. KSI's claim of lien was filed and accepted on August 27, 1997, but not formally recorded until September 30, 1997. Cappy's claims of lien were filed and accepted on December 5, 1997, but not formally recorded until January 23, 1998. Attributing the delays within the register of deeds office to the subcontractors, as suggested by defendant, would lead to absurd and unfair results. No lien claimant would ever know the number of days that would be "deducted" from the statutorily prescribed ninety-day period because the lag time between the filing and acceptance and the formal recording would vary case by case. One lien claimant might be subject to a thirty-day period, while another might be subject to a sixty-day period, and yet another to an eighty-ninety-day period, merely because of variances in formal recording times within the registers of deeds offices. We cannot sanction this result, which wholly negates the Legislature's concept of a ninety-day period expressed in the statute and has great potential for prejudice or unfairness. *Northern Concrete Pipe, supra* at 321-322.

We recognize that the Construction Lien Act's specified ninety-day period in § 111 is not subject to a substantial compliance interpretation. *Id.* at 323. The ninety-day deadline means precisely ninety days. *Id.* However, just as the Legislature could not have intended that ninety days be stretched to ninety-one or one hundred days or more, *id.*, neither could the Legislature have intended an arbitrary reduction of the ninety-day deadline to fifty-six or forty-three days or less, to allow for the internal office time involved in recording each particular claim of lien. Such idiosyncratic calculations would wreak chaos on the construction lien system.

We hold that filing within the ninety-day statutory period, and acceptance of a lien claim by the register of deeds, substantially complies with the act's requirement of recording the lien claim. Our holding leaves no uncertainty that the filing and acceptance must occur within the ninety-day period; it can reasonably be determined whether the requirement has been met in a particular context. *Id.* at 322, see also *id.* at 318 (a lien may be improperly filed and thus not accepted, in which case the requirement may not be met).

The dissent's analysis would be well taken if the standard under the Construction Lien Act was one of *strict compliance*, but it is not. The Legislature expressly adopted a standard of substantial compliance to secure the beneficial results of the act: "[s]ubstantial compliance . . . shall be sufficient for the validity of the construction liens . . . ." MCL 570.1302(1).

The strict compliance premise of the dissent reads the holding of *Northern Concrete Pipe, supra*, too broadly. The question in that case was limited to the ninety-day deadline and whether a lien that *was not properly filed* by the contractor within the ninety-day period could nevertheless be timely. *Id.* at 318, 321. As framed by the Court, the question was "whether the 'substantial compliance' provision here is applicable to the ninety-day filing requirement." *Id.* at 321. Observing that "[a] precise deadline is not well suited to an analysis of what constitutes 'substantial compliance,'" the Court declined to expand the deadline to accommodate the contractor's failure to supply a complete legal description for the lien filing until some 120 days after the last date of furnishing. *Id.* at 318, 323. We cannot view the circumstances in the present case as within the holding of *Northern Concrete Pipe*. The Construction Lien Act's substantial compliance standard and the Legislature's express directive that the act "shall be liberally construed to secure the beneficial results, intents, and purposes of this act" distinguishes it from other statutes and subsequent interpretations by the courts relied on by the dissent. MCL 570.1302(1).

Application of the substantial compliance provision in this circumstance comports with the Construction Lien Act's purpose of "protecting the rights of lien claimants to payment for wages and materials."[2] *Old Kent Bank of Kalamazoo v Whitaker Constr Co,* 222

---

[2] Further, application of the substantial compliance provision does not work against the purpose of protecting homeowners from paying twice for services, *Old Kent Bank of Kalamazoo v Whitaker Constr Co,* 222 Mich App 436, 439; 566 NW2d 1 (1997), because the claims asserted are against the recovery fund.

Mich App 436, 438-439; 566 NW2d 1 (1997). It also coincides with previous court decisions that have examined the recording requirement, in which the recording requirement was tacitly understood to require that the claimant *file* the lien with the register of deeds. See *Northern Concrete Pipe, supra* at 318, 322 ("a lien must be filed within ninety days after the last date when materials or services are supplied," and "[a]bsent strict compliance with the ninety-day *filing* requirement of MCL 570.1111(1) . . . ."); see also *Superior Steel Systems, Inc v Nature's Nuggets, Inc*, 174 Mich App 368, 370; 435 NW2d 492 (1989) ("Delene *filed* its construction lien on October 7, 1986." Further, the *Northern Concrete Pipe* Court referred to a "ninety-day deadline for *filing* a construction lien," *id.* at 320, stating that the "lien was eventually *accepted for filing,*" *id.* at 318. In this case, the liens were filed and accepted within the ninety-day period and were therefore timely.

Affirmed.

COOPER, J., concurred.

WILDER, J. (*dissenting*). I respectfully dissent. In *Northern Concrete Pipe, Inc v Sinacola Cos—Midwest, Inc*, 461 Mich 316, 321, 323-324; 603 NW2d 257 (1999), our Supreme Court held that the substantial compliance provision of the Construction Lien Act, MCL 570.1302(1), does not apply to the statutorily mandated ninety-day recording deadline found in MCL 570.1111(1). Because the liens asserted by Central Ceiling & Partition, Inc. (Central), Kitchen Suppliers, Inc. (KSI), and Cappy Heating and Air Conditioning, Inc. (Cappy) were not *recorded* within the ninety-day deadline, they ceased to exist, and the lower

court judgment in favor of Central, KSI, and Cappy
should be reversed.

I

To recover under the Construction Lien Act, a
claimant must record the lien within ninety days of
the last date of furnishing material or labor:

> Notwithstanding section 109 [MCL 570.1109], *the right* of
> a contractor, subcontractor, laborer, or supplier *to a con-
> struction lien* created by this act *shall cease to exist unless,
> within 90 days* after the lien claimant's last furnishing of
> labor or material for the improvement, pursuant to the lien
> claimant's contract, *a claim of lien is recorded in the office
> of the register of deeds* for each county where the real prop-
> erty to which the improvement was made is located. A
> claim of lien shall be valid only as to the real property
> described in the claim of lien and located within the county
> where the claim of lien has been recorded. [MCL
> 570.1111(1) (emphasis added).]

To resolve the dispute in this case, we must deter-
mine what constitutes "recording" a claim of lien in
the office of the register of deeds. This determination
is a matter of statutory interpretation, a question of
law that we review de novo. *Etefia v Credit Technolo-
gies, Inc,* 245 Mich App 466, 469; 628 NW2d 577
(2001), citing *Oakland Co Bd of Co Rd Comm'rs v
Michigan Property & Casualty Guaranty Ass'n,* 456
Mich 590, 610; 575 NW2d 751 (1998); *In re S R,* 229
Mich App 310, 314; 581 NW2d 291 (1998). Our
Supreme Court in *Macomb Co Prosecutor v Murphy,*
464 Mich 149, 158; 627 NW2d 247 (2001), observed:

> In considering a question of statutory construction, this
> Court begins by examining the language of the statute. We

read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [Citations omitted.]

Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used, *Phillips v Jordan*, 241 Mich App 17, 22-23, n 1; 614 NW2d 183 (2000), citing *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). Further, the language must be applied as written, *Camden v Kaufman* 240 Mich App 389, 394; 613 NW2d 335 (2000); *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 498; 597 NW2d 858 (1999), and nothing should be read into a statute that is not within the manifest intent of the Legislature as indicated by the act itself. *In re S R, supra* at 314.

The majority concludes that the filing of a lien within ninety days and the acceptance of the lien filing by the register of deeds substantially complies with the act's requirement to record the lien claim. Because this conclusion is contrary to the plain meaning of the term "recorded" as used in the act, I disagree.

First, while the term "recorded" is not defined in the Construction Lien Act, there is ample evidence in the act as well as other statutes with regard to its intended meaning. MCL 565.25, relating to entry books, the effect of entry by the register of deeds,

recording of certain instruments of encumbrance, perfection, or conditions, application, nonexempt persons, and penalties, provides in relevant part:

> (1) . . . In the entry book of levies the register *shall enter all* . . . liens [and] other instruments of encumbrances, and documentation required under subsection (2), noting in the books, the day, hour, and minute of receipt, and other particulars, in the appropriate columns in the order in which the instruments are respectively received.

> *         *         *

> (4) The instrument shall be considered as recorded at the time so noted *and shall be notice to all persons except the recorded landowner subject to subsection (2) of the liens, rights and interests acquired by or involved in the proceedings.* [Emphasis added.]

MCL 600.2567 provides in relevant part:

> (1) A register of deeds is entitled to the following fees . . .
> (a) For entering and recording a deed . . . or other instrument, $5.00 for the first page and $2.00 for each additional and succeeding page. . . . The fee shall be paid *when the . . . instrument is left for record.* . . .
> (2) In addition to any other fees proscribed in subsection (1) or (5) , a register of deeds shall collect a fee of $2.00 for entering and recording a deed . . . or other instrument. The fee shall be paid *when the instrument is left for record.* [Emphasis added.]

In MCL 570.1109, which describes notices of furnishing under the act, a sample form is provided:

> (4) The notice of furnishing, if not given on the form attached to the notice of commencement, shall be in substantially the following form:

*NOTICE OF FURNISHING*

To:

_____

(name of designee (or owner or lessee) from notice of commencement)

_____

(address from notice of commencement)

Please take notice that the undersigned is furnishing to

_____

_____

(name and address of other contracting party)

certain labor or material for   .

_____

(describe type of work)

in connection with the improvement to the real property described in the notice of commencement *recorded in liber* _____, *on page* _____, _____ *records,* . . . .
(name of county)

[Emphasis added.]

It is apparent from these statutes that the recording of a lien does not take place until an entry has been made in the book of levies, with the assignment of a liber and page number noting the date, hour, and minute the lien is entered. As both MCL 565.25 and MCL 600.2567 make clear, the leaving of the instrument for record, i.e., filing, *does not* constitute the recording of the document. See *People v Madigan*, 223 Mich 86, 89; 193 NW 806 (1923); *Hollis v Zabowski*, 101 Mich App 456, 457; 300 NW2d 597 (1980); see also 36A CJS, File, pp 396-398 (a paper or document is filed when it is delivered to or received by the proper officer to be kept on file, and the endorsement of the officer with whom it is filed is but evidence of the time of filing). The purpose of recording is made clear in MCL

565.25(4): the recording of a lien constitutes notice to all persons except as provided in subsection 2 that a lien claim is being asserted. The majority's conclusion that the filing and acceptance of the lien within the ninety-day statutory period substantially complies with the Construction Lien Act's requirement that the lien be recorded within that time frame defeats the purpose of the requirement and is inconsistent with the plain meaning of the term "recorded."

Precedent from our Supreme Court also recognizes that entry in liber must occur to record a document. In *Balen v Mercier*, 75 Mich 42, 48; 42 NW 666 (1889), the Court stated that "[o]ur statutes contemplate that any instrument which is entitled to be recorded shall first be entered by the register in the entry book, *and then it is deemed recorded.*" (Emphasis added.) In *Brigham v Brown*, 44 Mich 59, 61-62; 6 NW 97 (1880), the Supreme Court held that delivery of a mortgage to the register of deeds did not constitute recording and that recording did not occur until the actual copying of the mortgage into the record book took place. While the statutes at issue in these cases obviously are different from the Construction Lien Act that we interpret here, it is clear that in these prior cases as well as the instant case the purpose of recording is to give official notice of assertion of a claim on land title.

Further support for the conclusion that filing does not constitute recording is found in the precedent of several states. In *State v Noren*, 621 P2d 1224, 1225 (Utah, 1980), the Utah Supreme Court held: "Although the words 'file' and 'record' have occasionally been used somewhat interchangeably they have more frequently been interpreted as implying or requiring dif-

ferent things. 'Recorded' has been held to signify 'copied or transcribed into some permanent book' while 'filing' signifies merely delivery to the proper official." *Id.*, citing *Beatty v Hughes*, 61 Cal App 2d 489, 492; 143 P2d 110 (1943) and *Maryland Dep't of Natural Resources v Hirsch*, 42 Md App 457, 502; 401 A2d 491 (1979).

In *Markham v Markham*, 80 Hawaii 274, 281; 909 P2d 602 (1996), the Intermediate Court of Appeals of Hawaii, quoting Black's Law Dictionary (6th ed), found that "[a] document or instrument is considered recorded when it is 'commit[ted] to writing, . . . printing, . . . or the like[,]' 'or transcribe[d], or enter[ed] in a book, file, docket, register, computer tape or disc, or the like, for the purpose of preserving authentic evidence . . . [and] *for the purpose of giving notice.*' " [Emphasis added.]

The majority rejects application of the plain meaning of the term "recorded," under the circumstances of this case, as inconsistent with both the intent of the Legislature and the holding of *Northern Concrete Pipe, supra*. I disagree with this conclusion because the Supreme Court's holding in *Northern Concrete Pipe, supra*, adopts the strict compliance rule.

> It is a cardinal rule of statutory construction that a clear and unambiguous statute warrants no further interpretation and requires full compliance with its provisions, as written. Within the Construction Lien Act, however, the Legislature provided an exception to that rule, in the form of the "substantial compliance" provision. As an exception, this provision should not be interpreted to nullify altogether the general rule that statutes should be interpreted consistent with their plain and unambiguous meaning. [*Id.* at 320-321 (citations omitted).]

In interpreting § 111, the Supreme Court noted in *Northern Concrete Pipe, supra,* that because the statute emphasizes that the lien " "cease[s] to exist' if not recorded within the ninety-day deadline . . . [the provision is] not . . . well suited to a 'substantial compliance' application . . . ." *Id.* at 323. The Court goes on to state that

> [t]he case before us is a clear instance in which the Legislature could not have imposed a more precise requirement. MCL 570.1111(1); MSA 26.316(111)(1) states *without qualification* that a subcontractor's right to a lien ceases to exist if not recorded in the county office of the register of deeds within ninety days after the last furnishing of labor or material. [*Id.* at 323-324 (emphasis added).]

In my view, interpreting the term "recorded" to mean entry in the book of levies not only is consistent with the plain meaning of the statute but is consistent with the Legislature's intent to require strict compliance with this particular notice provision of the act. On the other hand, property owners and subsequent purchasers who check the book of levies after ninety days and find no recordation of a claim of lien will lack notice of a claim merely "filed," and thus will lack certainty of title under the result reached by the majority. As pointed out by the Supreme Court, "certainty of title could only be achieved [under these circumstances] by researching the complete history of improvements with respect to a particular parcel of property and painstakingly obtaining waivers of lien from each contractor, subcontractor, materials supplier, and laborer." *Id.* at 322.

The majority also concludes that attributing delays in recording by the register of deeds to lien claimants would lead to absurd and unfair results not contem-

plated by the Legislature. I agree that the Legislature likely did not contemplate that the register of deeds would fail to timely perform the duties imposed on the register by statute. However, departure from the literal construction of the Construction Lien Act is a diversion from this Court's proper task of determining the Legislature's expressed intent. *People v McIntire*, 461 Mich 147, 156, n 2; 599 NW2d 102 (1999). As such, I cannot accept the majority's conclusion that the rules of statutory construction permit the tacit understanding that the term "recorded" in the act really means filed. *Macomb Co Prosecutor, supra.* A goose simply is not a duck, even if it may sound as though it has a quack.

Where a lien claimant files the claim before the ninety-day recording deadline (as Central, KSI, and Cappy did in this case), the lien claimant is not without remedies to ensure timely recording. The claimant, which unlike all others knows the claim has been filed, can examine the book of levies before the ninety-day deadline expires to determine whether recording has occurred. Where the deadline is near expiration and the lien has yet to be recorded, the lien claimant can request immediate action from the register or seek extraordinary remedies in the circuit court. In any case, the difficulties attendant in determining whether the register is timely performing the duties of the office are not justification for this Court to redefine the commonplace and unambiguous statutory term "recorded." *McIntire, supra* at 156, n 3. The policy choice with regard to whether notice under these circumstances should be provided by recording or filing is best left to the Legislature.

For the above reasons, I would reverse the judgment of the lower court and remand for entry of an order granting summary disposition in favor of defendant Department of Commerce.