SOLOMON v. ALPENA CEDAR CO.

USURY—CONTRACTS—WAIVER—INTEREST—VOLUNTARY PAYMENT.
   Where plaintiff received certain notes for the purchase
   price of timber lands from one of the defendants which,
   remaining unpaid were afterwards incorporated in a con-
   tract with defendants, under which plaintiff advanced mon-
   eys for lumbering operations, he to share in the profits, the
   receipts being applied upon the indebtedness, in an action
   to recover balance due upon the note and also profits and
   commissions, the defense of usury was not available, as it
   is a personal one and may be waived, and usurious interest
   voluntarily paid may not be recovered.

Error to Wayne; Mandell, J. Submitted October
20, 1916. (Docket No. 29). Decided December 22,
1916.

Assumpsit by Harry R. Solomon against the Alpena
Cedar Company and others for profits and commis-
sions due upon a lumbering contract. Judgment for
plaintiff on a directed verdict. Defendants bring er-
ror. Affirmed.

*Henry K. Gustin,* for appellants.

*Joseph H. Cobb,* for appellee.

MOORE, J. This is an action of assumpsit brought
to recover profits and commissions claimed to be due
from the defendants under a contract between the
Alpena Cedar Company and the Solomon Lumber
Company, which contract was set out at length in the
declaration. The declaration also contained all the
common counts in assumpsit. It is claimed there was
a balance due besides the profits and commissions. The
defense was that the contract was usurious, and that,
as the Solomon Lumber Company had received from

the Alpena Cedar Company considerably more than the moneys advanced under the contract, they had no cause of action. The circuit judge allowed interest at the rate of 7 per cent. and rendered judgment against the defendants in the sum of $322. The case is brought here by bill of exceptions, and the one question is: Did usury enter into the contract so that a verdict should have been directed for the defendants?

To answer this question intelligently it will be necessary to consider the status of the parties. The defendant Henry K. Gustin, while on his way to Lansing to purchase lands, met Selig Solomon on the train. It was agreed Selig Solomon should furnish Mr. Gustin money to buy lands and they were to divide the profits. Later Mr. Solomon deeded the lands to Mr. Gustin for the amount he paid with interest at 7 per cent. He took in payment Mr. Gustin's four $1,000 promissory notes indorsed by the defendant Widner. Mr. Widner and Mr. Gustin started in to lumber the lands. They needed more money. They saw Mr. Solomon and wanted him to go into partnership in lumbering the lands. He declined to do so. They represented there would be from $10,000 to $15,000 profit. They stated they felt Mr. Solomon should have a profit in the lands because he put up the money to purchase them and still had his money in them, and they offered him a share in the profits at a stipulated price on each post and other timber cut, of 2 cents on standard ties, 1 cent on No. 2, 1 cent on tamarack ties, and ½ cent on cedar fence posts, and 25 cents a cord on pulp wood, if he would make the advancements they desired. They estimated the quantity of timber, and upon this basis it amounted to $2,150. Mr. Gustin, who was a lawyer of many years' experience, drew the contract referred to in the declaration which was executed by the parties.

It is the claim of the plaintiff that Mr. Gustin stated the contract was a legal contract, that the question of

usury was discussed, and Mr. Solomon said he did not want any usury in the contract, and Mr. Gustin said:

"No, this is plain enough. This is profits on the face of it, and that is all there is to it."

It is the further claim that Mr. Solomon relied upon Mr. Gustin's representations as being true. We quote those portions of the contract that are necessary to be considered in this litigation:

"Whereas the party of the first part is desirous of having the party of the second part advance it not to exceed twenty thousand dollars to be used for the purpose of lumbering said timber: Now therefore, in consideration of the covenants and agreements herein contained, the party of the second part agrees to furnish the party of the first part not to exceed twenty thousand dollars as hereinafter provided for lumbering the timber hereinbefore stated. The party of the first part hereby agrees to transfer to the party of the second part, and does hereby transfer to said party, all ties, posts and pulp wood and other forest products now cut and removed from said land and which may be hereafter cut or removed from said land as security for said money to be advanced, as herein provided.

"The party of the second part agrees to advance said money as follows: Three thousand dollars upon the signing of this contract, and the balance from time to time as the lumbering progresses, in accordance with the inspection bills of the party of the first part, upon the following basis, to wit:   *   *   *   The party of the first part agrees to execute its notes for each advancement with interest at the rate of seven per cent. per annum, which notes are to be guaranteed by J. A. Widner and H. K. Gustin of Alpena.   *   *   *

"All shipments of any of the above stock made by the party of the first part may be invoiced by the party of the first part, but it is expressly understood that all proceeds belong to the party of the second part, and all settlements from said shipments shall be at once turned over to the party of the second part until all advancements, interest, commission and other claims held by the party of the second part against said stock shall have been fully paid.   *   *   *

"As a part consideration of this contract for the furnishing of the moneys herein stated up to fifteen thousand dollars the party of the second part is to receive from the party of the first part, in addition to said advancements and interest, twenty-one hundred and fifty dollars. * * * All of said forest products are to be lumbered during the winter of 1910-1911.

"As further and part consideration of the above advancement the party of the first part agrees to execute in favor of the party of the second part its notes to the amount of four thousand dollars, in lieu of four promissory notes made by H. K. Gustin and indorsed by J. A. Widner in favor of Selig Solomon and now held by Selig Solomon, the said new notes in lieu of said four promissory notes to the amount of approximately four thousand dollars to be guaranteed by the said H. K. Gustin and said J. A. Widner, and to be payable out of the proceeds of the sale of the stock hereinbefore mentioned in addition to any amounts advanced for lumbering as hereinbefore stated, or for interest, commission, etc."

At the time the contract was signed a note reading as follows was given:

"$4,083.72.        ALPENA, MICH., Dec. 2, 1910.

"On demand after date we promise to pay to the order of the Solomon Lumber Co. four thousand eighty three and 72-100 dollars, at our office, Alpena, Michigan, Value received with interest 7 per cent per annum.

"ALPENA CEDAR CO.,
"J. A. WIDNER, Manager,
"Treas."

On back:
"H. K. GUSTIN.
"J. A. WIDNER."

At this time the four $1,000 notes given by Mr. Gustin for the purchase price of the lands were surrendered. Mr. Solomon made advances from time to time to the amount of $10,000, and the Alpena Cedar Company proceeded to lumber; the proceeds being turned over to Mr. Solomon. Later Mr. Solomon wanted a settlement. He claimed the $2,150 as profits and

commission as provided in the contract, and a balance of $322 on the note of $4,083. The defendants claimed that the provision in the contract for the payment of $2,150 in addition to interest made the whole transaction usurious, and that all payments made should be applied on the principal of the advancements, and should also apply to the principal of the $4,083 note. The trial judge held that the plaintiff could not recover the $2,150 profits and commissions.

After all the evidence was in, defendants asked for a directed verdict in their favor. This motion was overruled. The record shows the following:

"Paper marked Exhibit R offered in evidence November 23, 1914.

"*The Court:* Did you agree on the figures?

"*Mr. Friedman:* I want to make this statement for the benefit of the record. I desire to say without in any way conceding or admitting that the plaintiff is entitled to a verdict, and insisting upon the requests to charge that have been filed, that the computation made by Mr. Solomon here shows a balance due of $332, is the correct one if the plaintiff is entitled to a verdict; but in my opinion I don't think it applies to the rule laid down by the Supreme Court. If they are entitled to a verdict that is the correct amount.

"*The Court:* Let a judgment be entered for that amount instead of the other.

"*Mr. Friedman:* I take an exception to the court's directing a verdict."

Exhibit R shows the dates and the amounts of advancements and the amounts received and credited thereon.

The appellants seek by the writ of error not only to retain the $2,150, which they agreed to pay as profits and commission and avoid the payment of any interest on the $10,000 of advancements, but also to wipe out the balance due on the $4,083 note which was given in lieu of the $4,000 in notes given by Mr. Gustin to Mr. Solomon in payment for a deed of the lands.

Counsel cite in support of their contention sections 4857 and 4858, 2 Comp. Laws (2 Comp. Laws 1915, §§ 5998, 5999) ; *Rosen* v. *Rosen,* 159 Mich. 75 (123 N. W. 559, 134 Am. St. Rep. 712) ; and *Continental National Bank* v. *Fleming,* 170 Mich. 624 (134 N. W. 656). These sections of the statute have been construed by this court. Reference to some of the cases will be made later. The cases cited above are not controlling in this case.

The record shows Mr. Solomon did not have the money to make the advancements himself. The method of procuring the money was for the Solomon Lumber Company to make its note for the amount of the advance needed, and at the same time the Alpena Cedar Company made its note for a like amount guaranteed by Widner and Gustin as provided in the contract and delivered them to the Solomon Lumber Company. The two notes were then pinned together and put in the bank, the money obtained and delivered to the Alpena Cedar Company. The record shows that from time to time the moneys which came to the Solomon Lumber Company as the result of the lumbering operation were applied on the advancements, and the notes which were put into the bank were surrendered to the Solomon Lumber Company, which in turn surrendered the notes which had been given by the Alpena Cedar Company to it. This process continued until all the advancements and the notes given by reason thereof were paid and surrendered to the Alpena Cedar Company, and until only $322 remained unpaid on the $4,083 note which was given when the four $1,000 purchase-money notes were surrendered. It was this balance of $322 for which the circuit judge directed a verdict.

In *Gardner* v. *Matteson,* 38 Mich. 200, it is said:

"The defense of usury is a personal one, and may be waived, and so may the party voluntarily pay usurious interest, and where he does so he will not be permitted to recover it back."

In *Gray* v. *Lumber Co.*, 128 Mich. 427 (87 N. W. 376, 54 L. R. A. 731), it was said:

"It is claimed there was paid to the bank about $70 extra interest, which was usury, and which should have been applied as a general payment on the mortgage debt. It has been repeatedly held that the defense of usury is a personal one, and may be waived."

See, also, *Craig* v. *Butler*, 9 Mich. 21; *Smith* v. *Stoddard*, 10 Mich. 148 (81 Am. Dec. 778); *Sellers* v. *Botsford*, 11 Mich. 59; *Ruloff* v. *Hazen*, 124 Mich., at page 572 (83 N. W. 370).

Applying these cases to the instant one, we think the judgment should be and it is affirmed, with costs to the plaintiff.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.